THE CONNECTICUT COMPANY *vs.* THE CITY OF NOR-
WALK (APPEAL OF THE CONNECTICUT COMPANY
FROM THE PUBLIC UTILITIES COMMISSION).

\* First Judicial District, Hartford, May Term, 1915.
THAYER, RORABACK, WHEELER, BEACH and GREENE, Js.

All orders of the Public Utilities Commission must find their justifica-
tion in public convenience, necessity or safety; for the maintenance
and protection of the public welfare was the cardinal purpose of the
Act which created the Commission and invested it with a larger
control and supervision of public service corporations. Accord-
ingly, an enactment which authorizes the Public Utilities Commis-
sion ''to determine'' whether a street-railway company shall lay
one or two tracks on a new highway bridge (16 Special Laws,
p. 1144, § 4), will be construed to imply a determination reached in
the usual way, after a hearing and finding of public convenience,
necessity or safety, and not one made arbitrarily and at the mere
will or caprice of the Commission.
The General Assembly itself can determine the number of street-

---

\* Transferred from third judicial district.

railway tracks which shall be laid over a bridge, or it can delegate the determination of that question to a commission exercising administrative and executive functions.    It cannot, however, delegate legislative discretion to an administrative tribunal.

The primary standard or test having been prescribed by the legislature, it may transfer to an administrative tribunal the executive duty of carrying out the purpose and policy of the enactment; and in the discharge of this duty such tribunal is bound to give a hearing to all parties in interest.

Argued May 11th—decided July 16th, 1915.

APPEAL from an order of the Public Utilities Commission requiring the plaintiff to lay two railway tracks upon a new highway bridge over the Norwalk River, taken by the plaintiff to and tried by the Superior Court in Fairfield County, *Burpee, J.;* the court held that § 4 of the Special Act of 1913, underlying the order in question, was unconstitutional and void, and rendered judgment for the plaintiff setting the order aside, from which the defendant appealed. *Error and cause remanded.*

Reference may be had to 88 Conn. 472, 473, and to 89 Conn. 537, for statement of facts.

*John J. Walsh*, with whom were *Edwin L. Scofield* and *Edward J. Quinlan*, for the appellant (defendant).

*George D. Watrous* and *Carroll C. Hincks*, with whom was *Harry G. Day*, for the appellee (plaintiff).

WHEELER, J.    The Connecticut Company is a street-railway corporation which has for many years operated a single-track street-railway over the old Washington Street bridge, being a part of Washington Street, a highway in the city of Norwalk.

The General Assembly, in 1911, authorized the town of Norwalk, through its bridge committee, to construct

a new bridge across the Norwalk River in place of the old Washington Street bridge. 16 Special Laws, p. 490.

In ·1913 the General Assembly consolidated the municipalities in Norwalk into the City of Norwalk, transferring to it the authority of the town over this bridge, and continuing the powers of this committee. 16 Special Laws, p. 1038 (approved June, 1913).

The City of Norwalk, by this committee, preferred its petition to the Public Utilities Commission, praying that the Commission order, among other things, the Connecticut Company to lay two tracks across this bridge and its approaches. The Commission so ordered, and the Company took its appeal to the Superior Court, and in paragraph b. of its reasons of appeal alleged that § 4 of the Special Act approved June 4th, 1913, p. 1144, under authority of which the Commission made its order, was unconstitutional, in that it pretended to confer jurisdiction on the Commission to determine the number of tracks to be laid across the bridge by the Company arbitrarily and without regard to public convenience or safety.

Section 4 provided: "The Public Utilities Commission is hereby authorized to determine the number of tracks, not exceeding two, to be laid by any street railway company operating a street railway upon the bridge constructed under the provisions of said Act, subject to the rights of appeal provided for in chapter 128 of the Public Acts of 1911."

The City of Norwalk demurred to this paragraph because (1) the question whether one or two tracks should be laid was one which the General Assembly could itself have determined; (2) the Act was administrative in character and the determination of the number of tracks was a question which the legislature could delegate to the Commission; (3) the jurisdiction of the Commission under the Special Act depended upon a

finding that the thing ordered to be done was required in the interest of public convenience or safety.

The court overruled the demurrer, and upon hearing found the issues for the Company, and held the Act unconstitutional.

The trial court placed its decision upon two grounds: (1) that the Act arbitrarily authorized the Commission to determine the number of tracks, not exceeding two, to be laid by the railway across the bridge; and (2) empowered it to order the railway to occupy and use a part of the city's property against the wishes of the railway or city, or of both.

The Company, upon this appeal, presses one ground only, and does not rely upon the second ground of the court's decision. We approve of its judgment in confining the discussion to the first ground of the court's decision, since this point appears to us to be the only one inviting an argument of substance.

The General Assembly had power to itself determine the number of tracks to be laid across this bridge; and it had power to delegate to the Commission the determination of the number of tracks to be laid, for this was the adjudication of a matter of an administrative character and might properly be left for decision to a tribunal such as this Commission, administrative and executive in its functions. While undoubtedly the General Assembly could not delegate to an administrative tribunal legislative discretion, it might declare its own will and delegate to such tribunal the power to execute its will and carry out its policy. The question of the proper number of tracks to be laid across a bridge which is part of a public highway is one whose solution depends upon an investigation of the conditions surrounding the location at the time of the decision, and the weighing of these in the light of the public or private benefit, or the reverse. Obviously the lawmaking body cannot

know these, nor foresee changing conditions, and hence arises in many cases, as did in this case, the propriety, if not the actual public necessity, for committing the decision of this issue of fact to an administrative tribunal. Legislation of this character, having established the primary standard, may devolve upon the administrative tribunal the executive duty of carrying out the purpose and policy of the statute. *Red "C" Oil Co.* v. *North Carolina*, 222 U. S. 380, 394, 32 Sup. Ct. Rep. 152; *Interstate Commerce Commission* v. *Goodrich Transit Co.*, 224 U. S. 194, 214, 32 Sup. Ct. Rep. 436; *United States* v. *Grimaud*, 220 U. S. 506, 517, 31 Sup. Ct. Rep. 480; *Union Bridge Co.* v. *United States*, 204 U. S. 364, 27 Sup. Ct. Rep. 367; *Monongahela Bridge Co.* v. *United States*, 216 U. S. 177, 193, 30 Sup. Ct. Rep. 356; *Arms* v. *Ayer*, 192 Ill. 601, 61 N. E. 851.

The Company relies upon this principle, and contends that § 4 does not set up a primary standard governing the action of the Commission. The city assents to the Company's claim that the power of the Commission to determine this issue must rest upon provision found in the Special Act which authorizes its order upon a finding of public convenience, necessity, or safety. As this is the only question made upon the argument of the appeal, we shall limit our consideration to that, and not consider whether the Act might be sustained upon other grounds.

The Public Utilities Commission succeeded the railroad commissioners, and all the rights, powers and duties heretofore vested in the railroad commissioners, and not inconsistent with the Public Utilities Act, were transferred to and continued in the Commission, and new and enlarged powers were by the Act vested in the Commission. Chapter 74 of the Public Acts of 1853 created the railroad commissioners, and provided that they might make orders in reference to the management

and operation of railroads which in their opinion were necessary for the public safety. Throughout the many statutes relating to the powers of the railroad commissioners over railroads and railways, we find that public necessity, convenience, or safety is made the condition of the right of the commissioners to act. This basic fact is either found by the General Assembly or delegated by it to the commissioners to find. The Public Utilities Act was passed upon the public demand for greater public protection through larger control of and supervision over public service corporations. The Act is broad in its sweep, extensive in the jurisdiction conferred, and far-reaching in the supervision of public service corporations and the control over public and private interests. It is essentially a remedial statute, and as such, like the Workmen's Compensation Act, is to receive a liberal construction designed to effectuate its cardinal purpose. It would be a singular legislative condition, if it were so, that within two years of the enactment of this highly important piece of constructive legislation the legislature were found to have passed an Act intentionally disregarding the foundation upon which all of the powers of the railroad commissioners over railroads and railways rested, and committed to their successors in this single matter of operation the power of acting at their will and without regard to the necessity, convenience, or safety of the public. And that, too, while leaving all other administrative matters contingent upon this vital principle of public welfare. Doubly singular would this be when the legislature, twice in 1911, the year of the enactment of the Public Utilities Act, and twice in 1913, the year of the passage of the Special Act in controversy, made the public convenience, or necessity, or safety, the basis of the administrative orders authorized by the new Commission. Public Acts of 1911, Chap. 230 (p. 1518); Id.

Chap. 288 (p. 1600); Public Acts of 1913, Chap. 210 (p. 1834); Id. Chap. 225 (p. 1857). And it is significant of the common legislative intent that the Acts of 1913 were approved within two days of the approval of the Special Act in controversy.

An examination of the Public Utilities Act discloses that all of the orders which the Commission is authorized to make are by the terms of the Act dependent upon a finding of public convenience, necessity, or safety. By the terms of § 13 of the Utilities Act, the orders of the Commission affecting the operation of a railway are such only as may be reasonably necessary for the public safety, or the health or safety of the employees of the railway. The policy and purpose of this Act, no less than its terms, demonstrate the incapacity of the Commission to act upon its own arbitrary will. If § 4 of the Special Act of 1913 had been a part of the Act of 1911, we cannot conceive, in the light of the other provisions of the Act, how, in reason, it could be claimed that an order thereunder might be made at the will of the Commission. But § 4 is necessarily amendatory of the original Act, and the two are to be construed together as if one Act. The terms of § 4 are inharmonious with arbitrary action. The Commission is authorized to determine the number of tracks, not exceeding two. It has a settled procedure handed down from its predecessors, confirmed by its own terms, established by the custom and policy of the community. An administrative tribunal charged with the duty to determine a given matter must accord a hearing to parties in interest. The Commission can determine after it has accorded a hearing. There is no subject-matter for a hearing under § 4, other than whether there should be one or two tracks across this bridge, and there is no method of determining this except it be, as the appellant well says, "in conformity with princi-

ples underlying the establishment of the Commission."

The right of appeal accorded by § 4 also protects the Company against arbitrary action by the Commission. It may not act illegally, or in excess of its powers, or arbitrarily, else the court will set aside its order. Public Acts of 1911, Chap. 128, § 29 (p. 1396). No difference is made between an appeal from an order under § 4 and from orders under the Utilities Act, and the most natural inference is that the legislature did not make a difference because it found that each were alike in dependence upon the fundamental principle of public welfare upon which the Commission might act.

The Company, through the charter of its predecessor, was given the right to lay tracks, not exceeding two, across this bridge. The legislature, at the time of the grant, determined that at some time two tracks might be of public convenience and necessity. If the decision of when this should be done had been left to the Company, we apprehend that this grant could not have been attacked because of the possibility of arbitrary decision by the Company. Less reason for anticipating arbitrary action will be found in the decision of this same question by an impartial public tribunal of high authority. The legislature had power to amend the charter of the Company, and thus to transfer the decision of this question to the Commission. We find in the terms of § 4 of the Special Act, in the constitution of the Commission, in its purposes, and in the principles and policy underlying the railroad commissioners and their successor, the Public Utilities Commission, the manifestation of the legislative intent to condition the order of the Commission upon the public convenience, or necessity, or safety.

In its brief the appellee concludes: "The Commission may reach this determination on any basis which it

Connecticut Co. *v.* Norwalk.

pleases, private or public, personal or political, with or without notice or hearing. In any and every case its determination will be within the limitations of power which the General Assembly has attempted to confer upon it." We think this ignores the fact that the Commission must determine, and hence hear; it overlooks the provision for appeal, guarding the rights of parties against the illegal, or excessive, or arbitrary action of the Commission; it fails to take into account the fundamental principle at the base of any order of the Commission; and it disregards the purpose of our Public Utilities Act and the established policy of our law toward the subjects of its jurisdiction.

We omit discussion of the claim that the Public Utilities Commission had jurisdiction over this question under the Act of its origin, without reference to § 4, for the reason that this issue of law is not fairly raised on the appeal.

There is error; the judgment is set aside, and the cause remanded with direction that the demurrer to paragraph "b." of the reasons of appeal be sustained, and the cause proceeded with according to law.

In this opinion the other judges concurred.