### WILLIAM S. MEANY, JR.
*vs.*
### MICHAEL A. CONNOR, COMMISSIONER OF MOTOR VEHICLES

Superior Court        Fairfield County        File No. 57270

MEMORANDUM FILED MAY 29, 1939.

*H. Allen Barton,* of Greenwich, for the Plaintiff.

*Frank J. DiSesa,* Assistant Attorney General, for the Defendant.

CORNELL, J.   The questions presented in this proceeding arise as a result of an order of the motor vehicle commissioner made on February 21, 1939, suspending for 30 days next thereafter the plaintiff's license to operate a motor vehicle on the public highways of this state and directing that the certificate evidencing same, theretofore issued to plaintiff, be surrendered for such period.   On the same day, the plaintiff appealed from the order in question pursuant to the provisions of section 1610 of the General Statutes, Revision of 1930.   Coincidentally, he applied for a temporary injunction to restrain the commissioner from enforcing such order pending decision on his appeal. Accordingly, the defendant was cited to appear before the undersigned, sitting as a judge, on February 24, 1939, to show cause why a temporary injunction as prayed for should not issue.   On the latter date, at the request of counsel, the scheduled hearing was continued until March 8, 1939, when the parties with their counsel appeared in court.   It then became evident that the questions which the litigants were intent upon having decided could only be presented upon a hearing on the appeal on its merits, whereupon it was agreed that the parties produce evidence as upon such a trial and as soon as possible following the return day close the pleadings and file briefs. Under these circumstances the defendant, commissioner, refrained from insisting that the plaintiff surrender his operator's license certificate and plaintiff's motion for a temporary injunction, for obvious reasons, was not pressed.   The matter now at hand for disposition is the appeal.   The pleadings are not yet closed, but the decisive questions evolve from issues of law, concerning the identity of which there is no disagreement between counsel.   It is proposed to decide these without waiting for further pleadings which, when and if filed, will not change the issues.

The order of the defendant, commissioner, which is the subject of appeal, is the aftermath of plaintiff's arrest on February 3, 1939, while operating a motor vehicle on that part of the Merritt Parkway which lies in the Town of Greenwich and his subsequent trial on February 16, 1939, in the Town Court of Greenwich, following which he was found not guilty upon an information which charged him: with having operated "upon the Merritt Parkway, a certain motor vehicle....at a rate of speed greater than was reasonable having regard to the width, traffic and use of said highway, the intersection of streets and weather conditions against the form of the statute in such case made and provided." It is the circumstance that plaintiff was acquitted of having violated the statute quoted which accounts for plaintiff's challenge of the defendant's right to suspend his operator's license for conduct which formed or attended the basis of his prosecution. Plaintiff claims (1) that the commissioner is without authority to suspend or revoke a license to operate a motor vehicle except in instances where the conduct relied upon as furnishing cause for such action has resulted in a criminal prosecution followed by a conviction, and in any event may not do so in instances where following a trial, the operator has been found free from wrongdoing, and (2) that if he does possess power to suspend or revoke an operator's license in the absence of such a conviction, it (a) can only be exercised after a hearing first had at which the holder of the license sought to be suspended or revoked shall have opportunity to appear and be heard and (b) in any event such action is illegal where predicated—as it was here—upon no other information than that obtained from newspaper accounts or comment. As concerns the first of these (viz., (1) *supra*), these observations may be made: "The operation of motor vehicles upon the public highways of the State is a subject clearly within the police power." *LaPlante vs. State Board of Public Roads,* 47 R.I. 258, 260, 131 Atl. 641, 642. The General Assembly has exercised this power through the enactment of a large body of statutes, dealing on the one hand with mechanical requirements and on the other, designed to insure the fitness of drivers. In great measure these are concerned with the prevention of accidents in contra-distinction to the punishment and penalizing of persons responsible for such occurrences. The purpose of all of it is the protection of life, limb and property on and adjacent to the public highways. The legal duty of enforcing these preventative provisions has been

delegated to the motor vehicle commissioner to a very large degree. With respect to the suspension or revocation of operators' licenses certain of his duties are mandatory; others are discretionary. In the first class are those provided in section 1608(b) of the General Statutes, Revision of 1930, as amended in section 619c of the Cumulative Supplement to the General Statutes (1935). These leave him no option but to suspend or revoke operators' licenses issued to persons who have been convicted of violating any statute relating to motor vehicles or who, when charged with any such offense, shall forfeit a bond for appearance or against whom such a charge is nolled on payment of any sum of money, or who shall receive a sentence upon which execution is suspended and the period of such suspension is definitely fixed. In the second (or discretionary) category are those which are embraced within the provisions of the same statute (subsection [a]) which read: "No provision of this chapter shall be construed to prohibit the commissioner from suspending or revoking any registration or any operator's license issued under the provisions of any statute relating to motor vehicles. . . .for any cause that he may deem sufficient, with or without a hearing." This leaves no doubt of the legislative intention to vest the motor vehicle commissioner with power to suspend and revoke operators' licenses in instances where no conviction for violation of statutes relating to motor vehicles is involved, and such authority resides in him, provided (1) that such a delegation thereof is valid. Plaintiff contends that it is void as an attempted illegal delegation of legislative functions.

The rule to which courts try to adhere is, that while a legislative body may not delegate its powers to make laws to a board, commission or officer, yet having announced a purpose, formulated a policy or prescribed a rule of conduct, it may commit to such a board, commission or officer the performance of administrative and executive functions necessary to make effective the policy which it has declared or the purpose which it has disclosed, and in so doing clothe them with the right to exercise discretion commensurate with the duties thrust upon them. *Connecticut Company vs. Norwalk,* 89 Conn. 528, 531; *Woodruff vs. New York & New England R.R. Co.,* 59 id. 63, 83. This, of course, conceives a legislative declaration in which a standard of conduct is prescribed by which the acts of the delegatee of the power may be tested and to which it must conform; otherwise, the delegation would be unlimited

and, being so, would amount to a void attempt on the part of the legislative body to part with its own functions and prerogatives. *Connecticut Company vs. Norwalk, supra,* 531, 532. A cogent reason for the now general policy of vesting important powers in boards, commissioners and officers accompanied oft times with broad discretionary authority is the practical inability of legislative bodies to themselves perform the duties which they delegate and to specify in advance the various acts and conduct designed to be forbidden or prevented. *Sage-Allen Co., Inc. vs. Wheeler,* 119 Conn. 667, 678. But it is said that the rule, policy or purpose by which the administrative board or official is to be guided in disposing the authority conferred need not necessarily be described in precise phrase, that it is sufficient if this appears from the statutes which present the subject matter which the board or officer is required to administer. *Connecticut Company vs. Norwalk, supra; Sage-Allen Co., Inc. vs. Wheeler, supra,* 679, 680. It is obvious that the purpose of the statutes with which concern is had here is the prevention of accidents involving peril to life, limb and property upon the public highways of the state and that the acts of the motor vehicle commissioner in exercising the discretionary power conferred upon him must conform to and be reasonably adapted to effectuate the policy thus made evident. This, of course, excludes indulgence in mere personal caprice, since all orders made by the commissioner under section 1608(a) of the General Statutes, Revision of 1930, must find their sanction in conduct which if persisted in by operators of motor vehicles, in general, would evoke a reasonable apprehension of danger resulting to the driver himself or to others lawfully upon the public highways. According to the reasoning employed in *Connecticut Company vs. Norwalk,* and *Sage-Allen Co., Inc. vs. Wheeler,* both *supra,* the provisions of section 1608(a) of the General Statutes, Revision of 1930, are, therefore, valid. See, also, cases cited in note in 12 C.J., Constitutional Law, §330(2) p. 847.

This conclusion is not derogated from by the failure of the General Assembly to require that a hearing be afforded the holder of an operator's license as a condition precedent to its suspension or revocation. *LaPlante vs. State Board of Public Roads, supra.* That omission does not offend against constitutional provisions which vouchsafe that there shall be no deprivation of property without due process of law, since such a licensee has no property right in the continuance of his permis-

sion to operate. *Cusack vs. Laube & Co., Inc.,* 104 Conn. 487, 490; *LaPlante vs. State Board of Public Roads, supra.* Nor does the fact that the commissioner may at his discretion afford or deny a hearing to the holder of an operator's license before suspending or revoking such license involve a denial of equal protection of the law, if there is a provision permitting the holder of the revoked or suspended license to appeal to the courts, and in such a proceeding the licensee is afforded a full hearing. *LaPlante vs. State Board of Public Roads, supra.* Our statutes do provide for an appeal to the courts from the order of the commissioner of motor vehicles revoking or suspending an operator's license (Gen. Stat. [1930] §1610). And thus, in the ordinary case, ample protection is afforded against arbitrary action on the part of that official, while at the same time the commissioner is left unfettered by procedural niceties to act quickly and effectively where the exigencies demand that he do so. It may be, too, that injunctive relief may be available to a person whose license is suspended or revoked in a palpably illegal order where such action is accompanied by undue hardship upon the licensee and the remedy afforded him, under the particular circumstances, is inadequate. *Sage-Allen Co. vs. Wheeler, supra,* 673. For the reasons discussed, it is the conclusion that the provisions of section 1608 (a) of the General Statutes, Revision of 1930, in which the commissioner of motor vehicles is empowered to suspend or revoke licenses to operate motor vehicles "for any cause that he may deem sufficient, with or without a hearing" are valid.

The question of whether a suspension or revocation of an operator's license is arbitrary or illegal because the commissioner in ordering it acts upon information obtained by him from newspapers, in reality is not concerned with the fact or scope of his authority, but with the exercise of his powers. This, under all circumstances, must be reasonable when judged by the purposes for which it is reposed in him. *Loglisci vs. Liquor Control Commission,* 123 Conn. 31; *Strain vs. Mims,* 123 id. 275, 288; *Lazarevich vs. Stoeckel,* 117 id. 260, 262. It is, of course, immaterial from what source facts are communicated to the commissioner which cause him to suspend or revoke an operator's license; the question remains whether his action is reasonable or arbitrary. This may be attacked from more than one standpoint. One method is to show "what the facts really were and the assumption that those were the ones upon which the [commissioner] acted." *Grady vs. Katz,* 124

Conn. 525, 530.

The plaintiff here, has sought to inform the court fully of what his conduct was on the occasion which resulted in the suspension of his operator's license. He cannot complain, therefore, if the reasonableness of the commissioner's order is considered in the light of such facts and the circumstance that the commissioner was led to suspend the license because of accounts in the press, is disregarded.

In the foregoing, an effort has been made to dispose of the several matters of law argued by counsel for the parties.

The final question is, was the order issued in the present instance suspending the plaintiff's operator's license valid? As disclosed by the evidence, the only act of the plaintiff which could possibly be accounted inimical to the safety of other users of the Merritt Parkway, or himself, where he was driving under the traffic and other surrounding conditions at the time, was the circumstance that the speed of his car (viz., 55 miles per hour) exceeded the posted limit (viz., 45 miles per hour). This was fixed as the maximum speed permissible on the highway in question by the Merritt Highway Commission under the authority of "An Act Creating The Merritt Highway Commission", approved May 19, 1931 (Special Laws of 1931, No. 408), which provides: "When said Merritt highway shall be constructed, said commission shall formulate rules regulating traffic thereon." Exercising the authority thus conferred, the Merritt Highway Commission, at a meeting held on June 14, 1938, adopted the following regulation: "Vehicles using the Merritt Parkway shall not travel at a rate of speed in excess of 45 m.p.h." This action, plaintiff contends, is void because prior to the time it was taken, the authority of the Merritt Highway Commission to regulate the speed of motor vehicles on the Merritt Parkway had been impliedly repealed. That claim is based on the circumstance that by the provisions of an act approved June 8, 1927, entitled "An Act Including in the Trunk Line System the Highway from Stratford to the New York and Connecticut State Line" (Public Acts of 1927, chap. 282), the Merritt Parkway became part of the trunk line system of state highways. An act concerning the Merritt Highway, approved June 7, 1933 (Special Laws of 1933, No. 379) authorizes the state highway commissioner "to lay out the trunk line highway" referred to in chapter 282 of the Public Acts of 1927 and specifies the procedure to be followed by him in doing

so. It provides in section 4: "When such maps shall have been placed on file and such notice given, such portion or section shall be deemed to have been legally laid out as a trunk line highway and *all provisions of the statutes relating to trunk line highways shall apply to such layout or highway*" (italics not in original). The authority to "determine a speed limit which is reasonable and safe on any trunk line highway or bridge" is by the terms of section 566c of the Cumulative Supplement to the General Statutes (1935) reposed in the State Traffic Commission with the limitation, however, that any maximum speed so fixed and posted shall be only "prima facie evidence that such speed is not reasonable and safe." Plaintiff contends that the effect of the provisions of chapter 282 of Public Acts of 1927, referred to *supra,* and particularly the portion thereof which is quoted, was to delegate the power of determining speed limits on trunk line highways to the State Traffic Commission and as the residence of that authority in the latter body is inconsistent with its continuance in the Merritt Highway·Commission where it had been placed under the provisions of the special act approved May 19, 1931, an implied repeal of the power conferred in the latter statute resulted and with it the right of the Merritt Highway Commission to fix such speed limits terminated.

For a repeal by implication to result it is essential that the later statute apply to the same subject matter as the former and be at least equal in scope of operation in one or more respects so that a repugnance exists between the two in whole or in part, the repeal being effective to the extent of such repugnancy. *Costa vs. Reed,* 113 Conn. 377, 385. As indicating that this requirement is met, plaintiff relies upon one provision in the Special Act of 1933 (No. 379), viz., ".... and all provisions of the statutes relating to trunk line highways shall apply to such layout or highway." However, this language cannot be severed from the remainder of the context and, thus isolated, given a meaning apart from it. It must, of course, be read as referring to the subject matter of the statute and as operative thereupon, only. That statute evinces but one purpose, viz., to describe and make clear the method to be employed and procedure to be pursued in the acquisition of land on which to construct the then projected Merritt Highway. The phrase in question must be viewed as referring to the physical aspects of the highway in its completed state, for it is with that subject that the statute is concerned, not the use of

it when finished. Thus construed, it means, for example, that all of the duties imposed upon the state highway commissioner and others (if any there be) with respect to maintenance, re-pair and otherwise, appertain to it in common with other trunk line highways. Point is afforded this construction by the fact that when it was enacted, the General Assembly must be pre-sumed to have known that it had already designated the Mer-ritt Highway as a portion of the trunk line system of state high-ways *(Coombs vs. Darling,* 116 Conn. 643, 646) and yet hav-ing this knowledge delegated the duty of regulating the speed of motor vehicles using it to the Merritt Highway Commission. Ample reason for doing so exists in the fact that the Merritt Highway differs from all other trunk line highways in this state in features of engineering and construction and in the purpose which it was designed to serve, as a way used to a large extent for interstate vehicular traffic and subject, at frequent intervals, to exceedingly heavy travel with corresponding hazard to traf-fic. It is not unthinkable that the General Assembly deemed it advisable to empower a special commission to fix definite maximum speed limits, if the latter believed that necessary, rather than that traffic on that highway be regulated by limits such as if exceeded would constitute only *prima facie* evidence of violation. It is concluded for the reasons noted that the act entitled "An Act Concerning the Merritt Highway", approved June 7, 1933 (Special Laws of 1933, No. 379), did not repeal the authority vested in the Merritt Highway Commission under the provisions of "An Act Creating the Merritt Highway Commission", approved May 19, 1931 (Special Laws of 1931, No. 408), and that the latter body had power to fix a maximum speed limit governing the movement of vehicular traffic on the Merritt Highway.

Plaintiff contends, that granting this to be so, nevertheless, the Merritt Highway Commission never legally ordained a maximum speed limit applicable to the highway in question. This claim is based upon the fact that while the commission consists of nine members, nevertheless but four were present at the meeting of June 14, 1938, at which the maximum speed limit of 45 miles per hour was determined upon, *i. e.* less than a quorum.

There was no provision in the act creating the Merritt High-way Commission which exempted it from the general rule that such public bodies can legally act only when a majority are present after notice to all members. *Strain vs. Mims,* 123

Conn. 275, 281. In consequence, the speed limit of 45 miles per hour posted on the Merritt Highway at the time of plaintiff's arrest was not validly adopted and the operation of a motor vehicle on that highway at a rate of speed in excess of such posted limit would not in itself constitute an offense. As observed *supra,* however, the plaintiff was not informed against in the Town Court of Greenwich as having operated his car in excess of the speed limit so purported to have been determined by the Merritt Highway Commission, but under a general statute, quoted *supra,* the test of the violation of which latter was whether the speed at which he was driving when arrested was unreasonable under the conditions named. The question of whether the Merritt Highway Commission had placed a valid definite limit upon the speed of vehicles traveling upon the Merritt Highway is of importance here because even though the plaintiff were acquitted of violation of the statute with which he was charged, yet that fact would not be conclusive of the reasonableness of the commissioner's order in suspending his operator's license. In the latter determination the fact that he operated his car at a speed in excess of that prohibited, though he was not informed against on that score, would be an important circumstance inclining to uphold the reasonableness of the commissioner's order. The circumstance that a holder of an operator's license may be acquitted of having violated a statute relating to motor vehicles is not decisive of the validity of the commissioner's action in suspending or revoking his license to operate even where predicated upon conduct in which the driver was engaging at the time of, and which precipitated his arrest and subsequent trial. The two proceedings are distinct. They arise from separate sources of authority and are directed at the attainment of different ends. The one is criminal; the other civil. The first is punitive; the second preventative. The former depends upon the violation of some statute; the latter does not necessarily involve the breach of any law. *Glass vs. State Board of Public Roads,* 44 R.I. 54, 115 Atl. 244. This is well illustrated in the case at bar. Thus, if a valid speed regulation had been adopted to govern the movement of traffic on the Merritt Highway it is quite likely that a greater speed on occasions would still be reasonable. A person charged merely with having driven at an unreasonable speed might well be acquitted under such circumstances under such a charge. But the fact would remain, nevertheless, that he had exceeded the ordained speed limit, and even though not charged

with having violated it, the commissioner might properly consider that such conduct, despite his acquittal on the other charge made against him, would indicate a propensity which if continued would menace the safety of other users of the public highway and, accordingly, order the suspension or revocation of his operator's license. It is obvious that on an appeal to the courts from such an order, the question involved would be no different than in any other, viz., whether such suspension or revocation was an unreasonable act on the part of the commissioner.

In the instant case, that factor is not presented for the conduct of the plaintiff cannot be determined with reference to a regulation which, legally, did not exist. As noted, *supra,* in the absence of such a factor there is nothing in the evidence which would permit the commissioner to reasonably conclude that either the manner in which the plaintiff operated his car, or the circumstances obtaining at the time plaintiff was arrested, was dangerous to himself or others. Indeed, the court does not understand the commissioner to contend that it was. As there was no other reason for the suspension of plaintiff's operator's license, the conclusion is compelling that the commissioner's order, though inspired by commendable motives, was, nevertheless, unreasonable and hence illegal.

The appeal is sustained.