DONALD O. HAMMERBERG, MILK ADMINISTRATOR
*vs.*
FARMERS CO-OPERATIVE, INC.

Court of Common Pleas    Hartford County    File No. 42803

MEMORANDUM FILED MARCH 29, 1944.

*Jack Rubin,* and *Richard F. Corkey,* Assistant Attorney General, for the Plaintiff.

*Schatz & Weinstein,* of Hartford, for the Defendant.

PARMELEE, J. The plaintiff, Administrator of the Milk Marketing Act of the State, has brought this action on a debt claimed due from the defendant by reason of its failure to pay to the plaintiff the assessment for administration alleged to have been made by the plaintiff in compliance with law. The basis for this action is found in the 1941 Supplement to the General Statutes, chapter 107b, entitled "Milk Marketing Act", and specifically under the provisions of section 338f of said Act. This section provides that the Administrator shall have power to issue and amend orders applicable to milk dealers regulating the handling of milk. Requirements as to notice, hearings, issuance of orders, permissive terms and conditions and other regulations are set forth.

Section 338f(c) provides that any order issued by the Administrator pursuant to the provisions of this section shall contain certain terms and conditions as detailed therein; and subsection (7) entitled "Expenses" provides that the Administrator may issue an order "providing that each dealer subject to an order, except a dealer, a producer-dealer, who during any month receives or purchases less than two thousand five hundred quarts of milk from producers, shall pay to the administrator an amount for expenses reasonably incurred by the administrator in administering such order, but such amount shall not exceed two cents per hundred pounds of milk received or purchased from producers. In such case, the dealer may deduct fifty per cent of such amount from the price otherwise payable by such dealer to his producers. Such moneys shall be transmitted by the administrator to the state treasurer in the manner provided by law, and the appropriation made

for administration of this part shall be thereby increased by the amount so paid to the administrator."

The complaint alleges that the defendant is a "dealer" as defined in section 335f, and that as such has failed to make payment of the sum of two cents per hundredweight as determined by the Administrator pursuant to "Order Number 1" issued "in full compliance with Section 338f." It is also alleged that "all conditions precedent to the effectiveness of Order Number 1, as amended, as required by said Section 338f....have occurred."

The defendant demurs to the plaintiff's complaint for the following reasons:

"1. Section 338f(c) (7) of the 1941 Supplement of the General Statutes constitutes an allegal delegation of the legislative power of the General Assembly to an administrative official in that it gives to the plaintiff administrator uncontrolled power to levy a tax according to his unregulated discretion and thus violates the Connecticut Constitution Article 2nd and Article 3rd, section 1 and the Constitution of the United States, Amendment 14.

"2. Said section 338f (7) is further illegal and violative of the said Constitution of the United States in that said tax is discriminatory and arbitrary.

"3. Said regulation Article VII of Price Order No. 1 issued by said plaintiff administrator is invalid because the milk administrator does not have legal authority to levy a tax and said levy is illegal, arbitrary, discriminatory and constitutes a taking of property without due process of law."

Section 338f(c) (7) authorizes the Administrator to require dealers subject to an order to pay a share of the reasonable expenses of administration. Producers also participate in this expense, since the dealer may deduct 50 per cent of the amount required to be paid by him from the price otherwise payable to his producer. The money collected does not go for the general support of the State government, but may be used only for the expenses incurred in administering the orders authorized by the Act.

A state legislature has the power to require persons under regulation to contribute to the payment of administrative expenses as a reasonable and appropriate means for the accom-

plishment of the purposes of a regulatory statute. *United States vs. Rock Royal Co-Operative, Inc.,* 307 U.S. 533; *United States vs. Ridgeland Creamery Co.,* 47 F. Supp. 145; *Head Money Cases,* 112 U.S. 580; *Great Northern Railway Co. vs. Washington,* 300 *id.* 154; *Nebbia vs. New York,* 291 *id.* 502.

This exaction from those who are regulated is not to be regarded strictly as an exercise of the taxing power, but rather a regulatory assessment incidental to the purposes of the legislative regulation. *United States vs. Butler,* 297 U.S. 1, 61; *Head Money Cases, supra.*

Legislation providing for the licensing of vendors reveals an analogous exercise of the powers of government. It has been held in this State that it is a proper exercise of the police power to exact license fees to cover the cost of issuing the licenses and administering and supervising the regulatory measures whether the terms are fixed directly by the Legislature or indirectly through an agency created by it. *State vs. Cederaski,* 80 Conn. 478, 483; *State vs. Porter,* 94 *id.* 639, 642; *State vs. Tyrrell,* 100 id. 101, 102.

The section now in question (338f(c) (7) ) is but a part of section 338f which is a part of the Milk Marketing Act (Supp. [1941] chap. 107b). All related sections of the Act are pertinent to give full meaning to the one in question. Section 334f details the "legislative findings, purpose and policy" and the last two sentences declare in the following words: ". . . . attendant conditions and practices pertain to and exist in a paramount industry upon which the health and welfare of the inhabitants of the state are largely dependent; and the public interest therefore requires efficiency, equitable conditions, and the reduction or prevention of unhealthful, uneconomic, deceptive and destructive trade and price practices with respect thereto among producers, dealers and consumers. In exercise of the state police power to protect and promote the public health and welfare and to prevent fraud and imposition upon producers, such conditions and practices require control and regulation of the production, transportation, manufacture, processing, storage, distribution, sale and handling of milk as a business affecting the public health and interest."

The General Assembly of this State may by proper legisla-

tion regulate the production, marketing and sale of milk in this State, and may delegate regulatory power to an official board or officer. *State vs. Stoddard,* 126 Conn. 623; *Shelton vs. City of Shelton,* 111 *id.* 433. But this delegation of power is circumscribed by essential limitations as set forth in *State vs. Stoddard, supra,* wherein it is stated at page 628: "A Legislature, in creating a law complete in itself and designed to accomplish a particular purpose, may expressly authorize an administrative agency to fill up the details by prescribing rules and regulations for the operation and enforcement of the law. In order to render admissible such delegation of legislative power, however, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform, with a proper regard for the protection of the public interests and with such degree of certainty as the nature of the case permits, and enjoin a procedure under which, by appeal or otherwise, both public interests and private rights shall have due consideration. *Panama Refining Co. vs. Ryan,* 293 U.S. 388, 426, 55 Sup. Ct. 241, and note, 79 L. Ed. 474 *et seq; Hampton & Co. vs. United States,* 276 U.S. 394, 405, 409, 48 Sup. Ct. 348; *Wichita R.R. & Light Co. vs. Public Utilities Commission,* 260 U.S. 48, 59, 43 Sup. Ct. 52; *Connecticut Co. vs. Norwalk,* 89 Conn. 528, 531, 94 Atl. 992; 11 *Am. Jur.* 956. If the Legislature fails to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad, its attempt to delegate is a nullity. *Schechter Poultry Corp. vs. United States,* 295 U.S. 495, 530, 55 Sup. Ct. 837; *Holgate Bros. Co. vs. Bashore,* 331 Pa. St. 255, 262, 200 Atl. 672, 117 A.L.R. 639, 644, 645; *Van Winkle vs. Fred Meyer, Inc.,* 151 Ore. 455, 466, 49 Pac. (2d) 1140; *Jersey Maid Milk Products Co., Inc. vs. Brock,* 13 Cal. (2d) 620, 642, 91 Pac. (2d) 577, 589."

The defendant's demurrer attacks section 338f(c) (7) claiming that it gives the plaintiff administrator "uncontrolled power to levy a tax according to his unregulated discretion." The Legislature has designated the persons who may be required to pay as those who are "subject to an order" issued by the Administrator pursuant to authority specifically granted in detail by the Act. Certain dealers handling less than a named fixed quantity of milk are designated as exempt. The Administrator is limited to an assessment "for expenses reasonably incurred by the administrator in administering such

order"; and the Legislature has further controlled the amount which may be assessed by providing that it "shall not exceed two cents per hundred pounds of milk received or purchased from producers" which sum may be divided equally between dealer and producer. In other words, the Legislature has authorized an assessment of two cents per hundredweight provided that if the reasonable expense of administration is less, then the assessment must ·be less. The complaint alleges an assessment of two cents per hundredweight. Whether the "reasonable expenses" of administration justify an assessment equal to the limit prescribed by the Legislature, or the prescribed limits are too broad, present questions to be determined on an issue of fact. In discussing the validity of regulations made by an administrative authority the Supreme Court said in *H. Duys & Co., Inc. vs. Tone,* 125 Conn. 300, 312: "The Legislature having by its enactments declared policies, and fixed primary standards, may validly confer on administrative officers power to 'fill up the details' by prescribing rules and regulations to promote the spirit and purpose of the legislation and its complete operation"

The legislative act known as the Milk Marketing Act of 1941 declares a legislative policy and establishes intelligible primary standards for carrying it out. Section 338f(c) (7) of said Act prescribes with clarity the limits of the power delegated therein with reasonable certainty. Any person aggrieved has the right of appeal. (§343f.) It does not grant unlimited, uncontrolled or unregulated administrative discretion.

The defendant claims that the imposition of this assessment is discriminatory on the grounds as urged in its brief "that it is an added burden to the carrying on of the production and sale of milk." A sufficient answer to this contention may be found in the statement of the legislative findings, purpose and policy set forth in section 334f partly hereinbefore quoted. It is not only good law, but also good conscience that those who are engaged for profit in an industry upon which the health and welfare of the people of the State are largely dependent shall be subject to reasonable regulations for the "prevention of unhealthful, uneconomic, deceptive and destructive trade and price practices with respect thereto among producers, dealers and consumers."

The enactment of an order pursuant to the provisions of

section 338f(c) (7) and in full compliance with section 338f of the Milk Marketing Act is valid, being within the permissible delegatory powers of the Legislature.

For the reasons above stated the demurrer is overruled on all grounds.