The defendant was convicted of operating a motor vehicle while his right to operate was suspended, in violation of General Statutes § 14-215. The case was tried on an agreed statement of facts, and in its memorandum of decision the court set out the reasons for its finding of guilty. This memorandum was not in accordance with Circuit Court Rule 7.30.2. While we do not sanction this irregularity, we shall, in fairness to the defendant, accept the procedure followed by the parties and adopted by the court and consider the assignments of error as presented. Mayron's Bake Shops,Inc. v. Arrow Stores, Inc., 149 Conn. 149, 152.
The stipulated facts, with such fair and logical inferences as the court could reasonably draw therefrom, show the following: The defendant at no time had been a licensed automobile operator in the *Page 348 
state of Connecticut. He had never been a registered owner of a motor vehicle in this state. On March 2, 1960, he was convicted of the crime of tampering with a motor vehicle. General Statutes § 14-145. Such a conviction calls for a mandatory suspension of an operator's license or the right to operate. § 14-111 (b). At that time, the defendant resided at 171 Liberty Street, Pawcatuck, in Connecticut. Soon after the conviction, the commissioner of motor vehicles, acting under the provisions of § 14-111 (a) and without a hearing, suspended the defendant's right to operate a motor vehicle. On March 18, 1960, a notice of the suspension was sent by registered mail to "Douglas E. Bacher" at said address. On March 19, 1960, the envelope containing the notice was returned to the department of motor vehicles with the postal carrier's notation thereon, "Unknown at address given." On March 16, 1962, the defendant was convicted of operating an unregistered motor vehicle. On March 5, 1962, in the course of its investigation, the police department of Stonington was informed by the department of motor vehicles that its files disclosed no driving record of Douglas E. Barber of the aforesaid address. At the time of his conviction of March 16, the defendant was not charged with operating a motor vehicle while his right to operate was under suspension. On March 26, he was arrested on a charge of operating a motor vehicle while his right to operate was under suspension. While the case was pending, the defendant was again arrested, on April 29, for operating while his right to operate was under suspension. On May 18, a nolle was entered on the charge of March 26 because of the claimed infirmity in the address in the notice of suspension, as noted above. On June 17, the defendant was found guilty of the charge of operating while under suspension arising *Page 349 
on April 29. At that time, his right to operate a motor vehicle remained under the original suspension. From this judgment the present appeal is taken.
The errors assigned are directed solely to the question of notice to or knowledge of the defendant of the action of the commissioner in suspending his right to operate a motor vehicle. The words "right to operate" as used in the statutes must be construed as a "privilege" which no one may exercise except on meeting the qualifications imposed by statute. Dempsey v. Tynan, 143 Conn. 202, 207;Cusack v. William Laube Co., 104 Conn. 487, 490;State v. Verville, 16 Conn. Sup. 178, 179; State v.Roy, 23 Conn. Sup. 26, 28. The defendant had never qualified. The question raised by the defendant is whether, as a condition precedent, he was entitled to a notice under § 14-111 (a) before the suspension, which is not disputed, could be effective as to him. The claim made by the state is that he had actual notice or knowledge of that fact as a result of his arrest on March 26.
The notice by registered mail provided in § 14-111 (a) is required only as to a person "registered as owner or operator of any motor vehicle as shown by the records of the commissioner." No service of such notice is required. Whether the statute creates a rebuttable presumption, placing on the defendant the burden of refutation, we are not called upon to decide. The defendant was not entitled to the notice provided under the statute.
The fact that such a notice had been sent to the defendant by the commissioner, on the basis of information the defendant may have supplied to the police, and the inaccuracy in the spelling of his name, resulting in the return of the notice, do not make his right to notice superior to that of a licensed *Page 350 
operator. If he had held an operator's license under an alias or with a wrong address, his position would have been no better. The granting or suspension of a license or the right to operate a motor vehicle is an administrative act resting in the power of the commissioner, reasonably exercised. The exercise of that power is not punitive, but civil, in nature and is directed toward the prevention of accidents involving life, limb and property on the public highways of the state. The commissioner's authority extends to the suspension of the right to operate of those whose conduct indicates to him a propensity which, if continued, would menace the safety of others, as well as his own, in the use of public highways. Meany v. Connor, 7 Conn. Sup. 165,177.
Section 14-111 (a) confers on the commissioner of motor vehicles the authority to suspend or revoke an operator's license or the right to operate for any cause he may deem sufficient, with or without hearing. He may also cancel such suspension or revocation upon application of the person whose right had been suspended, upon further investigation and hearing. § 14-111 (k). An appeal from the decision of the commissioner may be taken to the Superior Court, which, if it finds the issues in favor of the appellant, may order reinstatement of the right to operate. § 14-134. These provisions, providing for an ultimate judicial review, afford ample protection against arbitrary or uninformed action of the commissioner. Meany v. Connor,
supra, 172. Statutes, such as ours, not requiring a notice and hearing before suspension or revocation have generally been sustained against various constitutional objections. See Larsen v. Warren,132 So.2d 177 (Fla.); Thornhill v. Kirkman, 62 So.2d 740
(Fla.); Spurbeck v. Statton, 252 Iowa 279;Hamsher Motor Vehicle Operator License Case, *Page 351 196 Pa. Super. 336; notes, 10 A.L.R.2d 833, 842, § 6, 125 A.L.R. 1459, 1460.
The fact of suspension at the time of the defendant's arrest on April 29 is not questioned. The principal complaint is that he had not received a notice of suspension as required by law. We have stated that he was not within the class of persons for whom the statutory notice was intended. Nor was it necessary for the state to prove, at least in the first instance, that a notice complying with the statute had been received. That does not mean that the defendant was not entitled to any notice of the commissioner's action in suspending his right to operate, for by such suspension he became liable to greater penalties for operating a motor vehicle than otherwise might be imposed, and thus might be presented the question of deprivation of his right to due process. The commissioner did send him a notice in the exact manner provided by statute. This notice was returned unopened with the notation described above. We need not consider whether the sending of such a notice was sufficient compliance with the statute, resulting in a legal presumption of suspension. The statute provides for a constructive notice, which is the law's substitute for actual notice. 39 Am. Jur. 236, Notice and Notices, § 7. It raises a legal inference that the method used will reasonably serve to inform the party addressed of the nature and contents of the notification. In the present case, it is claimed that because of the incorrectness in the surname of the addressee, there was no valid notice to charge the defendant with constructive knowledge of his status. 1 Merrill, Notice, § 642. This is apparently on the theory that where a specified mode of giving notice is prescribed by statute, that method is exclusive. 39 Am. Jur. 237, Notice and Notices, § 9. We do not decide whether, under the circumstances, the notice *Page 352 
was sufficient. The state, because of the asserted fault in the address, terminated the prosecution for the purported offense of March 26.
In the case before us, the state relies not on the statutory notice but upon imputed knowledge or actual notice. At the time of his first arrest on March 26, the defendant was informed of the charge of operating while his right to do so was under suspension. The information thus imparted him was the precise knowledge he had the right to have and to rely on for his defense. It was supplied not by casual volunteers but by officers of the law entrusted not only with enforcement of motor vehicle laws generally but, through direct communication with the department of motor vehicles, with the implementation of the commissioner's orders respecting suspension and revocation of licenses. § 14-111 (d). When the defendant chose to ignore this information and to operate his motor vehicle on April 29, he was doing so with the imputed knowledge that his right to operate was under suspension. The general rule, here applicable, is that knowledge of facts or circumstances which ought reasonably to excite suspicion and put one on inquiry is sufficient to charge one with notice of those facts that he might have ascertained by the exercise of ordinary diligence. "`Whatever is sufficient to put a man on inquiry amounts to notice; that is, where one has sufficient information to lead him to the knowledge of a fact he should be deemed to be cognizant of such fact.'" Bay State Milling Co.
v. Susman, Feuer Co., 91 Conn. 482, 490; Bond RubberCorporation v. Oates Bros., Inc., 136 Conn. 248,252. "[F]ull and adequate means of knowledge, present to a person when he acts, are, under ordinary circumstances, treated as the equivalent of knowledge." Nehring v. Connecticut Co., 86 Conn. 109,123; Post v. Clark, 35 Conn. 339, 342; Seabridge *Page 353 
v. Poli, 98 Conn. 297, 301; 39 Am. Jur. 238, Notice and Notices, § 12. The law does not require that feigned or deliberate ignorance must be overcome by proof of actual knowledge as it may exist in a person's mind. The closing of eyes to a fact does not cause a disappearance of that fact.
It is to be noted in this connection that, at the time the defendant's right to operate was suspended, the suspension was mandatory because of the offense he had committed. § 14-111 (b). The defendant was presumed to know that the law required suspension of his right to operate; or, expressed more correctly, ignorance of the law did not excuse him from being cognizant of that fact.Atlas Realty Corporation v. House, 123 Conn. 94,101.
 There is no error.
In this opinion JACOBS and GEORGE, JS., concurred.