MARK JUNIOR GREENWAY *v.* STATE
OF MARYLAND

[No. 125, September Term, 1969.]

*Decided November 24, 1969.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*George W. Bowling* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General,* and
*John C. Hancock, State's Attorney for Charles County,*
on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The decision in this case rests upon the determination of two issues: (1) what evidence is necessary to enable the trier of fact to find beyond a reasonable doubt that the appellant *knowingly* had in his possession a motor vehicle containing an engine from which the engine number had been defaced for the purpose of concealing or misrepresenting the identity of the vehicle; and (2) was there such evidence before the trier of fact.

The appellant was found guilty at a court trial in the Circuit Court for Charles County of violation of § 73, Art. 66½ of the Maryland Code. Specifically he was convicted of unlawfully having in his possession "a motor vehicle, to wit, a 1967 Chevrolet Super Sport Automobile, dark blue in color, Serial Number 138177B211292, Registered to John Thomas Saine, Sr., to which the manufacturer's engine serial number had been defaced for the purpose of concealing or misrepresenting the identity of said vehicle."

(1)

The statute provides:

"Any person who knowingly buys, receives, disposes of, sells, offers for sale, or has in his possession any motor vehicle or engine removed from a motor vehicle, from which the manufacturer's serial or engine number or other distinguishing number or identification mark or number placed thereon under assignment from the Department, or any vehicle from which the factory identification number for such makes of vehicles as are so identified or the factory serial number for such makes of vehicles as are so identified until the manufacturers thereof adopt, and use an identification number has been removed, defaced, covered, altered or destroyed for the purpose of concealing or misrepresenting the identity of said motor vehicle or engine is guilty of a misdemeanor."

The statute does not define "knowingly," as is sometimes

done in a particular statute. For example, in Md. Code, Art. 27, § 418B, proscribing the sale of certain obscene publications, "knowingly" is defined as "having knowledge of the character and content of the publication or failure to exercise reasonable inspection which would disclose the content and character of the same." There is no provision in the statute here concerned that failure to exercise reasonable inspection which would disclose that a serial number of a motor vehicle or engine number of a motor vehicle engine had been obliterated is knowledge. Nor does the statute prescribe a presumption of such knowledge from the mere possession of the motor vehicle or engine and there is doubt that such a statutory presumption would be constitutional. See *Leary v. United States*, 89 S. Ct. 1532. We can only conclude that "knowingly" as used in the statute means "having knowledge." A person may be found to have knowledge by evidence establishing that he had actual or direct knowledge, as, for example, that he defaced the number himself,[1] or admitted that he knew it had been defaced, and had no reasonable non-culpable explanation as to why it had been defaced. And such knowledge may be proved, like any other fact, by circumstantial evidence. It may be established from all the facts and circumstances of the case, although denied by a defendant, but the burden is, of course, on the State. Thus knowledge may be inferred but the inference must not be irrational or arbitrary for if it were it would be unconstitutional. It would be irrational or arbitrary unless it can be said with substantial assurance that the inference of knowledge is more likely than not to flow from the proved facts on which it is made to depend. See *Leary v. United States, supra,* at 1548. In other words, such knowledge may be found in a rational inference deduced from circumstantial evidence when such evidence indicates that the person buying, receiving, disposing of, selling, offering for sale, or possessing a motor vehicle or motor ve-

---

1. It is a crime to deface, destroy or alter an engine number with fraudulent intent. Md. Code, Art. 66½, § 74.

hicle engine, the serial number or engine number of which was removed, defaced, covered, altered or destroyed, knew or could reasonably have suspected that the number had been so tampered with. Possession of such a motor vehicle or engine, although not sufficient to show such knowledge, is a strong circumstance to be considered with all other evidence of guilty knowledge. And, in addition, a person may be found to have knowledge under the recognized rule of law, which states that one, with an unlawful purpose in mind, who deliberately "shuts his eyes" to avoid knowing what would otherwise be obvious to view, acts at his peril in this regard as far as the criminal law is concerned, and is treated as having "knowledge of the facts as they are ultimately discovered to be." *Perkins, Criminal Law* (1957), pp. 684-685.

(2)

In the instant case the evidence clearly showed that the appellant had in his possession a motor vehicle containing an engine which he admitted had been removed from another motor vehicle and that the number on the engine had been defaced by covering it with a bead of weld. The trial court found as a fact that the bead of weld had not been placed on the engine "in connection with attaching anything to the engine, nor with repairing any crack in the block, nor with anything other than that it was intended to cover the lettering on the engine number." We cannot say that this finding on the evidence was clearly erroneous. Md. Rule 1086. This finding permitted a proper inference in the circumstances that the number had been defaced to conceal or misrepresent the identity of the engine and the motor vehicle in which it had been placed. There was no evidence sufficient to establish that the appellant had absolute knowledge that the number had been defaced. The only question is, therefore, whether from the facts and circumstances the appellant could be properly found to have such knowledge. The resolution of this question requires a review of the evidence adduced.

The evidence disclosed that when an automobile is severely damaged in the front or rear it may be cut in two and the damaged section replaced by welding onto the undamaged section a "factory cut or clip." The cut is made at places where the factory has put the car together. There is a "front end clip" and a "rear end clip." [2] Those in the business will buy wrecked cars complete and receive a certificate of title. The serial number on the title corresponds to the serial number on the car, usually on the door post but the number apparently is on several other places including the chassis. They will then buy a clip, front end or rear end, as required, which was obtained from other wrecked cars. "They ship clips all the way from Florida north. This is a business * * * They ship all over the country." When the clip is received the wrecked car is cut in two and the clip welded onto the undamaged portion. When necessary other motors and transmissions, usually obtained from other cars, are installed. The title and serial number of the wrecked car is used for the car which results.

The appellant operated such a business under the name of Holiday Motors. Although he had been in body repair work for about 20 years, he started to so restore wrecked automobiles and sell them in September 1967, to keep his body and fender man busy. The early part of February 1968 John Thomas Saine, Jr. went to the used car lot of Holiday Motors. A 1967 Chevelle Super Sport hardtop automobile, serial number 138177B211292, registered in the name of his father, but which he used, had been stolen on 8 January 1968 and he was trying to find a comparable used car. He learned that Holiday Motors had such a car for sale. He inspected two cars they had. From his observations he determined that car no. 1 was

---

2. It seems that in a "front end clip" the cut is made on the windshield post. The appellant described it as "four inches on the windshield post and four inches on the clip, so then you will have enough left over to cut it * * * because if you haven't got lined up there would be an inch missing from the car." He said that a front end clip is "just sheet-metal, and cowl and dash and sometimes it has an instrument pod and sometimes it doesn't." It does not include a motor.

made up of the front and interior of the car stolen from him and car no. 2 was made up of the sides and rear of the stolen car. A Maryland State Police Trooper and an investigator for the National Automobile Theft Bureau examined the cars. They ascertained that a front end clip had been welded onto car no. 1. The serial number, on a plate which was screwed on (it was the practice of the manufacturer of the car to attach the plate with rivets), was 136177G109939. The motor serial number had been obliterated by welding. The transmission serial number was the same as that of the car stolen from Saine and that number would not have appeared on any other transmission. The appellant's brother produced a certificate of title issued by the State of New Jersey showing that a 1967 Chevrolet coupe, serial number 136177G109939, dated 10 October 1967 had been assigned by Motors Insurance Corp. to Armiger's Auto Center. Car no. 2 had also been cut in two and a clip welded on. The serial number plate, affixed with factory rivets bore number 136177B106281. There was a bill of sale for this car but no certificate of title. The front was a Chevrolet Malibu but the exterior rear portion contained certain scratches and marks which Saine said had been on the car stolen from him. The appellant introduced a bill from Armiger's Auto Center, Laurel, Delaware to Holiday Motors, dated 23 November 1967 for five automobiles including a "1967 Chevelle 136177G109939" on which was stated, "Titles Guaranteed—Wrecked as is." He also introduced a receipted bill from Burley's Shell Service, Orange, Virginia, dated 17 January 1968 to Holiday Motors for a 1967 "Chev front clip" in the amount of $275 and a 4 speed transmission in the amount of $125. The bill did not further identify either the clip or the transmission. He testified that the front end clip purchased in Orange, Virginia had been welded on the rear portion of the 1967 Chevelle purchased in Delaware bearing serial number 136177G109939 and that "most likely" the transmission, purchased at the same time as the clip, was placed in that car. He said that no title is ever received

when a front end clip or rear end clip is purchased. The motor in the car could have been any one of four he had on hand. He never looked at motor numbers because "it isn't used on the title, isn't necessary. You change motors like you change tires on the car. * * * In other words you have the serial number on the title, but not the motor number." He said his usual practice was to take the motor and transmission out when a wrecked car was purchased "because usually the motor will have damage * * * [W]e don't worry about the same motor going back in the car. We couldn't care less, as long as it is the kind of motor that goes in them." He checked the serial number on the door post but never the motor number. He denied defacing the number on the motor placed in the car. "No. We had no need to, that I know of. * * * [N]ormally you just don't check a motor number on a car registered in Maryland, that's all. You don't pay any attention to it." On cross-examination he said that he did the cutting on the 1967 Chevelle purchased from Armiger's. He did not know whether he or his brother or some one else placed the serial number on the car. To him "the only thing is being the correct number on it to match the title and everything." He did not know whether there was a serial number on the front end clip purchased in Virginia. "And if it had of been, we'd probably taken it off and put ours on." He said when an individual motor, not in a car, was offered to him for purchase he would look to see if the motor number had been defaced and if so, he would not buy it. But when he bought a complete car containing a motor he would not look for a motor serial number. He claimed that the motor in car no. 1 came from one of 15 or 20 cars he had bought. He did not know who had actually installed it, "probably the mechanic at the place." He had never seen the rear end of the car from which the front end clip he purchased had been cut. He said that the rear clip on car no. 2 was from one of three or four he had in stock for "at least a couple of months" and denied that it came from the car stolen from Saine, alleging that it was im-

possible because he had the rear clip before the Saine car was stolen. He claimed the seats in car no. 1 came from the car he bought in Delaware, even though Saine had identified the interior as that of the stolen car from scratches that had been on the seat of his car. The appellant did not notice the number on the transmission. "I have bought a lot of transmissions and from people that I know have been legitimate. I have never had a serial number put on a bill of sale. * * * On a transmission I would never look at it." He denied that he at any time knew that any of the parts that were used on car no. 1 were stolen. Upon inquiry by the court he said he was aware of the provisions of Art. 66½, § 73. There was evidence that the appellant's brother had ordered the front end clip and transmission used in car no. 1 and received and paid for them when they were delivered. The brother also denied knowing that the serial number on the motor in car no. 1 had been defaced.

We do not believe that the evidence permitted an inference not irrational or arbitrary that the appellant knew that the engine number had been defaced. We cannot say with substantial assurance that the inference of such knowledge was more likely than not to flow from the proved facts on which it must be made to depend. For in substance all that was proved was that the appellant had in his possession an engine with a defaced number. It was not shown that he ever had direct contact with the engine, either in purchasing it, receiving it after it was purchased, removing it from one car and installing it in the other, or otherwise. He denied seeing that the number had been defaced. But the appellant admitted that he knew the provisions of Art. 66½, § 73. We think that under all the facts and circumstances the court could have properly found that the appellant, with an unlawful purpose, namely to avoid knowledge whether or not the engine number had been defaced, deliberately "shut his eyes" so he would not have knowledge of what would otherwise be obvious to his view, namely that the number on the engine in his possession had in fact been de-

faced. The engine was easily accessible to him at any time while in his possession and it was immaterial, in the face of the statute, that engine numbers may not be required on certificates of title and that the statute does not provide specifically that failure to make a reasonable inspection means knowledge. He thus acted at his peril and may be deemed as having "knowledge" of the fact that the engine number was defaced. Since the evidence was sufficient to prove all the elements of the crime of which he was convicted and his criminal agency, the judgment of the lower court on the evidence was not clearly erroneous, Md. Rule 1086.

In answer to the first two questions presented by the appellant we find that the evidence was sufficient to sustain the conviction and that the court did not err in denying the motion for judgment of acquittal. See *Williams v. State*, 5 Md. App. 450.[3]

The third question presented by the appellant—was it necessary that the State show that the appellant had knowledge of the defacing of the engine number — has been answered herein above. We have found that it was necessary and that the knowledge required was sufficiently established. But the appellant urges that it was obvious from the court's opinion that it "wrongly interpreted" Art. 66½, § 73 because it did not include the word "knowingly" in referring to the section. He quotes from the lower court's opinion:

> "Now, it seems to me the statute is pretty clear, that any person who has in his possession any engines from which the manufacturer's serial number or any other distinguishing number has been removed, defaced, covered, altered or destroyed for the purpose of concealing

---

3. We note that the lower court could have properly found from the evidence, despite the appellant's denials and explanations, that he had in his possession, not only the front end of the car stolen from Saine, but also the rear portion, the interior and the transmission.

the identity of said motor vehicle or engine, is guilty of a misdemeanor."

And later in the opinion the court stated, "Of course knowledge isn't necessary, but he admittedly knew about it, because I suppose he couldn't very well deny it." But it is clear that this latter statement referred, in the frame of the reference in which it was stated, not to knowledge of the defacing of the engine number, but to the knowledge of the provisions of section 73 of which the appellant admitted he was aware. We are satisfied from all of the court's opinion, and the record, that the court in arriving at its verdict properly construed the statute and considered its provisions. We are bolstered in this conclusion by the court's comments in denying a motion for a new trial to which the appellant refers in his brief in support of his claim that the court did not consider the requirement of knowledge in arriving at its verdict of guilt. The court said that in arriving at the verdict it first determined that the engine number had been defaced and that it had been defaced for the purpose of concealing or misrepresenting the identity of the motor vehicle or engine. It said, "We then, reasoning backward from that point, took up the question of whether or not the defendant had knowledge. We agree with [defense counsel's] legal proposition that to be guilty under this section knowledge is required, knowledge of the fact that one has in his possession an obliterated serial number, obliterated for the purpose of concealment. * * * Under the circumstances, the Court again reaches the same conclusion we reached before; not that knowledge is necessary to this case (it is clear the court meant by this that direct knowledge was not required), but that he (the appellant) had the requisite knowledge required by the statute."

*Judgment affirmed; costs to be paid by the appellant.*