583 A.2d 250

STATE of Maryland

v.

Malcolm D. McCALLUM.

No. 4, Sept. Term, 1990.

Court of Appeals of Maryland.

Jan. 2, 1991.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for petitioner.

Bradford C. Peabody, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

PER CURIAM.

On October 12, 1987 Respondent, Malcolm D. McCallum was involved in an automobile accident. The accident was investigated by an officer of the Anne Arundel County Police Department who, after completing his investigation, charged McCallum with driving while suspended under Maryland Code (1984, 1987 Repl.Vol.), Transportation Article, § 16–303(c), as well as several other motor vehicle violations. McCallum elected a jury trial and was ultimately convicted of the charged motor vehicle offenses. He was sentenced to one year incarceration with all but ninety days suspended for the driving while suspended conviction. McCallum appealed his convictions to the Court of Special Appeals. The intermediate appellate court reversed McCallum's conviction for driving while suspended, holding that the circuit court erred when it refused to give an instruction that *scienter* is an element of driving while suspended, and also erred in admitting into evidence McCallum's entire motor vehicle record. *McCallum v. State*, 81 Md.App. 403, 567 A.2d 967 (1990). We granted the State's petition for certiorari to consider both of these issues.

The evidentiary issue arose when the State offered into evidence a certified copy of McCallum's driving record from the Motor Vehicle Administration (MVA). The apparent purpose of offering the record was to establish that McCallum's license was suspended, and that suspension letters were mailed (although the record does not reflect to what address the notices were sent). The record was three pages

long. It contained entries stating that McCallum's license was suspended and that suspension letters had been mailed. It also contained a great deal of irrelevant information about prior suspensions and prior convictions for other motor vehicle offenses, including prior convictions for reckless driving and for driving while suspended.

When McCallum's driving record was offered into evidence, defense counsel objected because some entries were highlighted with yellow markings. The objection was overruled. At the conclusion of the instructions and closing argument as the jury was ready to begin their deliberations, the court asked counsel to "check what's going into the jury room and make sure you're satisfied." At that time defense counsel again objected to the computer printout of McCallum's driving record because it "contains significant irrelevant information."

■ The State contends that McCallum waived any relevancy objection because his only objection when the record was originally offered was based on the fact that some entries were highlighted. Since we will be reversing the conviction and remanding for a new trial, we need not determine whether McCallum waived his relevancy objection. Suffice it to say, if the State offers the record at any subsequent trial and there is an objection, the court should redact all portions of McCallum's motor vehicle record which are not relevant to the charge at issue.

McCallum's motor vehicle record, which was introduced into evidence under the official record exception to the hearsay rule, contains the following entries that are relevant to the instant offense: On April 14, 1987, "fail to pay fine in district court—suspension letter mailed"; a second entry shows that again on April 14, 1987, "fail to pay fine in district court—suspension letter mailed"; on May 11, 1987, there were two entries of the suspensions for the two previous failures to pay fines in district court; then, on May 15, 1987, there is an entry of "district court fail to appear—suspension letter mailed."

McCallum's defense to the driving while suspended charge was that he had not received notice that his license was suspended. He testified that "I never received a suspension letter in the mail because I don't live at that address." McCallum indicated that, for several months during the period of time when the suspension letters were mailed, he was incarcerated on an unrelated charge. When he got out of jail he discovered that he had been evicted and all of his mail had been destroyed by his landlord. McCallum also testified that shortly before the instant offense he paid a $90.00 fine and was given a receipt by the district court clerk. He testified that he was told by the clerk that when he brought the receipt to MVA he would be able to pick up his license.[1] Apparently his contention was that, since he had received no suspension notice and had paid at least one fine, he was unaware that his driving privileges were still suspended.

McCallum's attorney requested the court to instruct the jury that criminal intent or *mens rea* is required for the offense of driving while suspended. The trial judge refused to give the instruction and opined that *mens rea* was not an element of the offense. In his closing argument, the State's Attorney told the jury that "the reason the court did not instruct you as to intent is that intent is not required."

The section under which McCallum was charged, Transportation Art., § 16–303(c), states: "A person may not drive a motor vehicle on any highway ... while the person's license or privilege to drive is suspended in this State."[2]

---

1. It is unclear from the record if the Department of Motor Vehicles had possession of McCallum's driver's license, but there is some indication that it was taken from him by a police officer prior to the instant offense. Later in his testimony, however, McCallum indicated that he did have his license, but that he had left it at home.

2. Since we are going to reverse McCallum's conviction and remand the case to the trial court, we need not address the issue, but we should point out that if, as his motor vehicle record seems to indicate, McCallum's suspension was for failure to appear in response to a citation and for failure to pay fines in district court, the proper charge

Violation of this subsection is punishable by imprisonment not to exceed one year and/or a fine not to exceed $1,000.00 for a first offense, and imprisonment not to exceed two years and/or a fine not to exceed $1,000.00 for subsequent offenders. Md.Code (1984, 1987 Repl.Vol., 1990 Cum. Supp.), Transportation Art., § 27–101(h).

■ The intermediate appellate court held, and we agree, that *mens rea* is required for the offense of driving while suspended, and that the trial judge erred in failing to so instruct the jury. We recognize that other states are divided on this issue. In *Zamarripa v. First Judicial Dist. Court,* 103 Nev. 638, 747 P.2d 1386 (1987), the Nevada Supreme Court noted that:

"There is a wide split of authority on the question whether driving with a suspended license requires proof of intent. Oregon, Kansas, Ohio, [and] Nebraska ..., for example, have held that no criminal intent is necessary for conviction of driving with a suspended license. [Citing in n. 3, *Grogan v. State,* 482 N.E.2d 300 (Ind.Ct.App. 1985) [3]; *State v. Jones,* 231 Kan. 366, 644 P.2d 464 (1982); *State v. Grotzky,* 222 Neb. 39, 382 N.W.2d 20 (1986); *State v. Morrison,* 2 Ohio App.3d 364, 442 N.E.2d 114 (1982); *State v. Buttrey,* 293 Or. 575, 651 P.2d 1075 (1982).] Arizona, Alaska, Colorado and North Carolina, on the other hand, have all held that criminal intent or knowledge is necessary for conviction. [Citing in n. 4, *Gregory v. State,* 717 P.2d 428 (Alaska Ct.App.1986); *State v. Jennings,* 150 Ariz. 90, 722 P.2d 258 (1986); *People v. Lesh,* 668 P.2d 1362 (Colo.1983); *State v. Finger,* 72 N.C.App. 569, 324 S.E.2d 894 (1985).] California

---

may have been under Maryland Code (1984, 1987 Repl.Vol., 1990 Cum.Supp.), Transportation Article, § 16–303(h), which prohibits driving while suspended for failure to appear in court or pay fines.

**3.** *Grogan* has since been overruled by *State v. Keihn,* 542 N.E.2d 963 (Ind.1989); thus Indiana joins the ranks of states requiring *mens rea* for driving while suspended.

and Maine have statutes requiring knowledge of driving with a suspended license."

*Id.,* 747 P.2d at 1388.

Transportation Art., § 16–303 defines the offense of driving while suspended without specifying any culpable mental state as an element. But as the Supreme Court cautioned, "Certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement." *United States v. United States Gypsum Co.,* 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854, 870 (1978).

In *Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988), this Court discussed the development of the "public welfare" statutory offenses which are punishable without proof of *mens rea.* We noted that "the contemporary view ... disfavors strict liability offenses." *Id.* at 650, 547 A.2d at 1047.

In *Dawkins,* we identified some of the factors which would indicate that the Legislature intended to eliminate the requirement of *mens rea* and create a strict liability public welfare offense. Those factors were: 1) " 'Public welfare offenses' are generally regulatory in nature," and we noted that this could include some "traffic regulations and motor vehicle laws...." *Id.* at 644, 547 A.2d at 1044. "[T]he purpose of the penalty is to regulate rather than to punish behavior." *Id.* at 645, 547 A.2d at 1044. 2) Public welfare offenses "commonly involve light fines or penalties," *id.* at 644, 547 A.2d at 1044, and, quoting Sayre, *Public Welfare Offenses,* 33 Colum.L.Rev. 55, 70 (1933), "the penalty in such cases is so slight that the courts can afford to disregard the individual in protecting the social interest." 3) "While liability is imposed regardless of the defendant's state of mind, the defendant is generally in a position to prevent the violation from occurring." *Dawkins,* 313 Md. at 645, 547 A.2d at 1044.

Analyzing the instant offense using the considerations set forth in *Dawkins,* we reach the conclusion that driving

while suspended is not one of those "public welfare" offenses where the Legislature intended to eliminate the requirement of *scienter*. We explain.

The first consideration is whether the offense is "regulatory in nature." While we recognized that many motor vehicle laws are regulatory, the instant offense is both regulatory and punitive. Some suspensions are for the purpose of at least temporarily taking unsafe or high risk drivers off the road; other suspensions are essentially punitive. Their primary purpose is to punish a driver for failure to appear in court, failure to pay a fine, or failure to take a chemical test for intoxication. The offense is not entirely regulatory in nature.

The second consideration relates to the penalty. The maximum penalty for driving while suspended is significant. It carries a period of incarceration not to exceed one year, and a second offender can receive double the period of incarceration. Both the nature of the penalty and the inclusion of an enhanced penalty for repeat offenders give some indication that the Legislature did not intend this to be a "public welfare" offense.

Perhaps the most important consideration, clearly indicates that this is not a "public welfare" offense; namely, that "regardless of the defendant's state of mind, the defendant is generally in a position to prevent the violation from occurring." *Dawkins*, 313 Md. at 645, 547 A.2d at 1044. McCallum would have no reason to avoid driving and no reason to suspect that he was endangering the public by driving if he had no knowledge that his driving privileges were suspended.

Weighing these considerations, we conclude that *mens rea* is required for the charge of driving while suspended, and the trial judge erred in failing to so instruct the jury.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.

CHASANOW, Judge, concurring.

I concur in the Per Curiam opinion of the Court, but, since the Court is reversing McCallum's conviction because the judge erroneously failed to instruct the jury that *mens rea* is necessary to convict for driving while suspended, I believe we should for the guidance of the trial court elaborate on the *mens rea* that would be necessary to convict.

The Court of Special Appeals defined *mens rea* with a quote from Judge Learned Hand:

> "Ordinarily one is not guilty of a crime unless he is aware of the existence of all those facts which make his conduct criminal. That awareness is all that is meant by the *mens rea,* the 'criminal intent,' necessary to guilt, as distinct from the additional specific intent required in certain instances ... and even this general intent is not always necessary."

*McCallum v. State,* 81 Md.App. 403, 410 n. 2, 567 A.2d 967, 970 n. 2 (1990), *quoting* Clark and Marshall, *A Treatise on the Law of Crimes,* § 5.01 at 268 (7th ed. 1967), in turn *United States v. Crimmins,* 123 F.2d 271, 272 (2nd Cir. 1941). The *mens rea* that we are concerned with is "knowledge" rather than "intent." Unquestionably McCallum intended to drive. The issue is whether McCallum had "knowledge" that his driving privileges were suspended, and thus, his mental state must be assessed.

There is more than one mental state that may constitute "knowledge." The first and highest form of "knowledge" is actual knowledge, that is, an actual awareness or an actual belief that a fact exists. A second form of "knowledge" is what has often been called "deliberate ignorance" or "willful blindness." R. Perkins, *Criminal Law,* Ch. 7, § 4 at 687 (1957). The latter form of "knowledge" exists where a person believes that it is probable that something is a fact, but deliberately shuts his or her eyes or avoids making reasonable inquiry with a conscious purpose to avoid learning the truth. *See* 1 W. LaFave & A. Scott, *Substantive Criminal Law,* § 3.5 at 307 (1986), and author-

ities cited therein. In *United States v. Jewell*, 532 F.2d 697 (9th Cir.), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976), the 9th Circuit Court of Appeals noted that the deliberate ignorance or willful blindness form of knowledge has been accepted by leading commentators in the United States and in England. The opinion quoted from Professor Glanville Williams' *Criminal Law: The General Part*, § 57 at 157, 159 (2d ed. 1961), as follows:

"To the requirement of actual knowledge there is one strictly limited exception.... [T]he rule is that if a party has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge.... The rule that wilful blindness is equivalent to knowledge is essential, and is found throughout the criminal law."

*Id.* at 700. The doctrine of "deliberate ignorance" or "willful blindness" has become well recognized in the federal courts and has been applied in a variety of criminal prosecutions. For example, in *U.S. v. Feroz*, 848 F.2d 359 (2d Cir.1988) (*per curiam*), the defendant was charged with importing heroin into the United States. The heroin was found in a secret compartment in an attache case that the defendant was carrying. A deliberate ignorance instruction was proper when defendant claimed he was unaware of the contraband and that the attache case, which appeared to be empty, was given to him two hours before his flight. In *U.S. v. Hiland*, 909 F.2d 1114 (8th Cir.1990), a deliberate ignorance instruction was proper in a prosecution for fraudulently marketing an unapproved and misbranded drug where two defendants took no action to investigate or consult the F.D.A. despite indications that the drug that they were marketing was dangerous; and in *U.S. v. Picciandra*, 788 F.2d 39 (1st Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986), a deliberate ignorance instruction was proper where defendant, who was an attorney charged with aiding and abetting income tax evasion, received shopping bags full of cash from a co-defendant and claimed he relied on the representation that the cash was

attributable to the sale of a schooner and was "legal." One author has pointed out that "the Courts of Appeals in all of the circuits have either expressed acceptance of the [deliberate ignorance] doctrine or adopted some form of deliberate ignorance instruction." Chesnut, *United States v. Alvarado: Reflections on a Jewell,* 19 Golden Gate U.L.Rev. 47, 56 (1989).

The Court of Special Appeals recognized the principle behind deliberate ignorance in *Greenway v. State,* 8 Md. App. 194, 197, 259 A.2d 89, 92 (1969). Judge Orth writing for the intermediate appellate court stated that, "a person may be found to have knowledge under the recognized rule of law," if he "with an unlawful purpose in mind ... deliberately 'shuts his eyes' to avoid knowing what would otherwise be obvious to view."

Many states do not require *mens rea* to convict of driving while one's license is suspended. In states where *mens rea* is required, there are at least implications that the deliberate ignorance doctrine could be used to establish *mens rea.* In *Jeffcoat v. State,* 639 P.2d 308 (Alaska Ct.App.1982), the Court of Appeals of Alaska held that the offense of driving while suspended required proof of *mens rea.* The court implied that it might recognize deliberate ignorance as a form of knowledge when it stated:

"Obviously, the state need not affirmatively prove actual notice in each case. When evidence produced at trial indicates that the defendant had cause to believe that his license would be suspended, compliance by the state with [the notice requirement] may give rise to an inference that the defendant's failure to receive actual notice was the result of intentional or unreasonable conduct on his part which was calculated to avoid receipt of notice of his license suspension."

*Id.* at 313 n. 4. *See also Alexander v. State,* 712 P.2d 416 (Alaska Ct.App.1986). In *City of Albuquerque v. Juarez,* 93 N.M. 188, 598 P.2d 650 (1979), the Court of Appeals of New Mexico held that knowledge of suspension was required for a conviction of driving while suspended, but

implied that showing willful or voluntary avoidance of notice would be sufficient. The court stated:

"[S]ome degree of wilful or voluntary avoidance of notice is necessary when notice has not been received....

The prosecution prevails on the notice issue when it shows (1) delivery and acknowledged receipt by the licensee; or (2) inability to notify because of voluntary avoidance by the licensee."

*Id.*, 598 P.2d at 653. *See also State v. Barber*, 24 Conn. Supp. 346, 190 A.2d 497 (1962).

Deliberate ignorance requires a conscious purpose to avoid enlightenment; a showing of mere negligence or mistake is not sufficient. Also, "deliberate ignorance" is a *form* of knowledge, not a *substitute* for knowledge. Therefore, if McCallum actually believed that his driver's license was not suspended, he could not be guilty of the offense.

I believe McCallum would have the required *mens rea* in the instant case if he was deliberately ignorant of his suspension. Deliberate ignorance should be established if McCallum believed it was probable that his license was suspended and if he deliberately avoided contact with the MVA to evade notice. For example, the trier of fact could find that: 1) based on his failure to pay district court fines and failure to appear in court, McCallum knew that it was probable that his license was suspended; 2) McCallum failed to fulfill his obligation to keep MVA apprised of his current address,[1] or that he failed to contact MVA after learning that for several months his mail was destroyed, and 3) McCallum deliberately avoided contact with MVA to avoid receiving notice of the suspension of his driver's license. These findings should justify a conclusion that McCallum's intentional avoidance of notice of his suspension satisfied the *mens rea* requirement and was the equivalent of actual knowledge of his suspension. Chief Judge

---

1. Md.Code (1984, 1987 Repl.Vol., 1990 Cum.Supp.), Transportation Article, § 16–116(a) requires a licensed driver to notify the MVA within thirty days of moving from the address shown on the license.

Murphy has authorized me to state that he joins in this opinion.

McAULIFFE, Judge, dissenting.

I do not agree that actual knowledge of suspension is a required element of the offense of driving a motor vehicle while suspended. As I see it, the intentional driving of a motor vehicle on a highway or other property specified by the statute, at a time when the driver's license or privilege has been suspended in accordance with law, is all that need be shown. The concept of basic fairness to the defendant, which underlies the court's discussion of *mens rea*, has been addressed by the General Assembly in its careful structuring of the steps that must be taken before a suspension can become effective, and in the guarantee of legally adequate constructive notice that is inherent in the statutory procedure.

This defendant's driving privileges were suspended in April and May of 1987 because of his failure to pay two different fines imposed by the District Court of Maryland, and his failure to appear in that court on a third charge. Section 27–103 of the Transportation Article, Maryland Code (1977, 1987 Repl.Vol.) provides, in pertinent part:

(a) *In general.*—If a person fined under the Maryland Vehicle Law or under any federal traffic law or regulation for a violation occurring in Maryland does not pay the fine in accordance with the court's directive:

(1) The court may so certify to the Administration; and

(2) On such certification, after giving the person 10 days advance written notice, the Administration may suspend the driving privileges or license of the person until the fine has been paid.

Section 26–204, dealing with the requirement that a person appear in court in response to a traffic citation, provides:

(a) *Compliance required.*—A person shall comply with the notice to appear contained in a traffic citation issued to the person under this subtitle.

* * * * * *

(d) *Suspension of driving privileges.*—On receipt of a notice of noncompliance from the District Court, the Administration shall notify the person that the person's driving privileges shall be suspended unless, by the end of the 15th day after the date on which the notice is mailed, the person:

(1) Pays the fine on the original charge as provided for in the original citations; or

(2) Posts bond or a penalty deposit and requests a new trial date.

(e) *Failure to comply with subsection (d).*—If a person fails to pay the fine or post the bond or penalty deposit under subsection (d) of this section, the Administration may suspend the driving privileges of the person.

Section 12–114, which deals with the method of giving notice, provides:

(a) *Manner of notice.*—Unless another method for giving notice is specifically required, the Administration shall give any notice that it is required or authorized to give under the Maryland Vehicle Law or any other law, either:

(1) By personal delivery to the person to be notified; or

(2) By mail to the person at the address of the person on record with the Administration.

(b) *When mailed notice effective.*—If notice is given by mail, the notice is effective at the end of the fifth day after its deposit in the mail.

(c) *Proof of notice.*—Proof that notice has been given may be made by the certificate of any officer or employee of the Administration or the affidavit of any adult, naming the person to whom the notice was given and stating the time, place, and manner of giving the notice.

Section 16–116(a) imposes upon every licensed driver the obligation to maintain a current address of record with the Motor Vehicle Administration (MVA). That section provides:

(a) *Notice required.*—If any individual who has applied for or obtained a driver's license under this subtitle moves from the address given in the application or shown on the license, the individual shall, within 30 days of the change, notify the Administration in writing of the former address and new address and the identifying number of any license issued to the individual.

The defendant's MVA record discloses that on 14 April 1987, the MVA mailed two notices of suspension to him, for his failure to pay two fines. On 15 May 1987, the MVA mailed an additional notice of suspension to him for his failure to appear in the District Court of Maryland, and entered his suspension for failure to take action following the first notices.

The defendant does not contend that these letters were not mailed, or were not received at his address of record. He defends on the ground that he was not then residing at his address of record. Explaining that he was at the time incarcerated on unrelated charges, the defendant testified that "I never received a suspension letter in the mail because I don't live at that address." In my opinion, even if believed, that explanation does not constitute a defense.

It would be a sad state of affairs if a suspension of driving privileges could not be made effective until the State had given actual notice of the suspension to the defendant. Irresponsibility, failure to obey the law regarding notification of change of address, and a nomadic lifestyle would be rewarded. Only those who were conscientious in attending to their affairs would be affected by suspensions. The legislature has required that the MVA follow procedures which are reasonably calculated to give actual notice of suspension to licensees. It has specifically delayed the effective date of suspension in cases of this kind, to reasonably ensure that the licensee receives notice and has an opportunity to correct any oversight. This is a reasonable, and in my judgment lawful, compromise between the Utopian desire for actual notice in every case,

and the practical realization that requiring such notice is unworkable.

In *Ford v. State*, 85 Md. 465, 37 A. 172 (1897), this Court upheld a statute making possession of lottery or policy slips a crime, rejecting a claim that the State could not constitutionally punish an unknowing or unintentional possession. The Court noted that "the statute has made the mere possession of the articles a crime because that is the most effectual way to break up the lottery business." *Id.* at 480, 37 A. 172. The Court also noted the very practical problems inherent in making guilty knowledge or intent an element of the crime:

> But if after a person has undoubtedly gotten into his possession one of the prohibited articles he is to be permitted, notwithstanding the language of the statute, to prove that he found it, or did not know what it was, it will make the statute practically useless, for if he swears that such was the case it will generally be impossible for the state to prove the contrary, and will be a great temptation to perjury, not only to the accused, but to others who might come to his assistance.

*Id.* at 477, 37 A. 172. Moreover, said the Court, in those rare cases where the judge is convinced that a person entirely free of any criminal knowledge, intent, or purpose was caught in the web of a necessarily broad statute, the judge could impose a nominal sanction.[1] *Id.* at 477–78, 37 A. 172. Although this State's policy with respect to lottery tickets has undergone a major revision since 1897, the rationale of *Ford* continues to be valid.

The entries on the official MVA record of "suspension letter mailed" were sufficient to show that notices of suspension were mailed to the defendant on the dates stated. There is a rebuttable presumption that public officers properly perform their duties, *Lerch v. Md. Port Authority*, 240

---

1. Today, a trial judge enjoys expanded powers of disposition, and in an appropriate case may grant probation without judgment. Maryland Code (1957, 1987 Repl.Vol., 1990 Cum.Supp.) Art. 27 § 641.

Md. 438, 457, 214 A.2d 761 (1965), and that presumption is sufficient to support a finding that the notices of suspension were properly addressed, stamped, and mailed. There is an additional rebuttable presumption that a letter properly addressed, stamped, and mailed reached its destination at the regular time. *Border v. Grooms*, 267 Md. 100, 104, 297 A.2d 81 (1972); *Kolker v. Biggs*, 203 Md. 137, 144, 99 A.2d 743 (1953). These are evidentiary rebuttable presumptions, well grounded in fact and human experience. The presumptions, although they may assist in proving necessary facts, do not relieve the State of proving an element of the offense, and therefore do not run afoul of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Thus, by the entries on the MVA record, there was sufficient proof, in the absence of evidence to the contrary, that the notices were mailed to the defendant on the dates stated, at his address of record, and were received at that address.[2]

A person in the position of this defendant may, of course, offer evidence to rebut the presumptions. There may be proof, for example, that a copy of the notice letter retained in the files of the MVA shows that the original was mis-addressed. Or, a defendant might offer testimony which, if believed, would prove that the notice letter was never received at the address of record. Because the obvious legislative intent is to have the suspension become effective within a specified time after actual delivery at the address of record, proof that the notice was not received at that address would constitute a defense.

Although the burden of persuasion never shifts from the State, the presumptions fulfill the State's burden of coming

---

**2.** Section 12–114(c), providing that proof of notice may be given by a certificate of any officer or employee of MVA, supplements but does not supplant the presumptions that arise from the official entry in the MVA record. The entry gives rise only to a presumption—the certificate contemplated by § 12–114(c) would provide actual proof, just as if a representative of the MVA had appeared and testified to those facts.

forward with evidence to show delivery, and thus to show an effective suspension. Once that has been accomplished, the defendant has the burden of coming forward with evidence to meet the presumptions. In this case, the defendant offered no such proof. He did not contend the notices had not been received at his address of record. He simply said he did not receive the notices because he was not there. Because the State did not have to show actual receipt by him of the notices, this was no defense.

The statutory scheme, as I interpret it, does place upon all licensees the duty to keep the MVA advised of their address of record, and to make such arrangements as might be required from time to time to ensure that they timely receive mail sent to them at that address. But this is not an unreasonable burden, and it is one that the law imposes in other situations.[3] The legislature might have required, as it has in other situations, that notice be sent by certified mail, return receipt requested, but it was under no obligation to do so. Indeed, in dealing with certain types of persons, first class mail may be more likely to achieve actual notice than certified mail.

As I read the Court's opinion, a licensee who gives the MVA a fictitious address, or who refuses to notify the MVA of a change of address, and therefore does not receive notice of suspension, may continue to drive through any period of suspension entered pursuant to § 26–204 or § 27–103 without fear of conviction if caught. The approach suggested by Judge Chasanow in his concurring opinion would not necessarily change that result, because the State would still have to prove that the defendant believed it was probable that his license was suspended and that he deliberately avoided contact with the MVA to evade

---

**3.** For example, a party to court proceedings is required to keep the court and other parties advised of that party's current address. Maryland Rules 1–311(a) and 1–321(a). Service of most pleadings may be made by mailing the pleading to the address last given by a party, and unless that party takes appropriate action, default may ensue or a bench warrant may issue.

notice of that fact. I would follow the apparent legislative intent to have the suspension become effective at the expiration of the stated time following receipt of the notice at the address of record, and to punish those who thereafter drive during the period of that suspension.

The MVA record should not have been admitted in its entirety. However, the defendant's objection was inadequate to preserve that question for appellate review. Defendant's counsel objected only to the fact that certain portions of the record had been "highlighted," and this problem was corrected before the exhibit was given to the jury. Moreover, even if defense counsel's later comments were to be taken as a timely objection, the error in admitting the entire record was harmless. The defendant did not deny that notices of suspension were received at his address of record, or that he was driving the automobile during the period of suspension. Thus, there was no genuine issue of fact placing the defendant's credibility before the jury, and consequently no possibility that the defendant was adversely affected by the improper admission of the extraneous portion of the record.

I would reverse the judgment of the Court of Special Appeals and direct that the judgment of the Circuit Court for Anne Arundel County be affirmed.