766 A.2d 663

**William Thomas RICE, Jr.**

v.

**STATE of Maryland.**

**No. 1287, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Feb. 6, 2001.

Joseph E. Carey, Bowie, for appellant.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Marna McLendon, State's Atty. for Howard County, Ellicott City, on the brief,) for appellee.

Argued Before EYLER, RAYMOND G. THIEME, JR. and WILLIAM W. WENNER, (Ret'd, Specially Assigned), JJ.

EYLER, Judge.

In the Circuit Court for Howard County (Gelfman, J.), William Thomas Rice, appellant, was convicted in a court trial of driving while his license was suspended, in violation of Md.Code (1999 Repl.Vol. & 2000 Supp.), § 16–303(c) of the Transportation Article ("TA"), speeding, failing to obey a stop

sign, and failing to display a registration card on demand.[1]
Appellant was sentenced to one weekend in the Howard
County Detention Center and was fined $500 on the driving
while suspended conviction. He was fined a total of $200 on
the lesser convictions.

On appeal, appellant challenges the sufficiency of the evi-
dence to support his conviction for driving while suspended.
Specifically, he contends that, on the evidence presented, the
State could not prove the element of *mens rea* necessary to
sustain that conviction. We disagree, and affirm the judg-
ments of the circuit court.

### FACTS AND PROCEEDINGS

Appellant's trial was held on July 18, 2000. The State
called Officer Thomas Rukamp, of the Howard County Police
Department, who testified that on September 24, 1999, at
11:20 p.m., he was on patrol in a marked police cruiser on
Ducketts Lane, near Karas Walk, in Howard County. He saw
the driver of a black car speed down Karas Walk, fail to stop
for a stop sign, make a u-turn, and speed back down Karas
Walk in the direction from which he had come. Officer
Rukamp followed the driver, who continued to speed. Even-
tually, the driver turned into the driveway of the house at 6192
Karas Walk. Officer Rukamp pulled into the driveway behind
the black car and turned on his emergency lights. The driver
jumped out of the car, ran to the front door of the house, and
banged on it, yelling to be let in. The door opened and he ran
inside.

Appellant was the driver of the black car. Officer Rukamp
was familiar with appellant and appellant's wife from prior
encounters with them at the Karas Walk house. After appel-
lant ran into the house, Officer Rukamp went to the front door
and knocked. Appellant's wife answered the door and opened
it. Officer Rukamp looked into the house and saw appellant,

---

1. Appellant was granted a judgment of acquittal on a charge of posses-
sion of a suspended license and was found not guilty of negligent
driving.

drinking a beer, walking toward the front door. Appellant told Officer Rukamp that he "wasn't driving and [Officer Rukamp] couldn't prove it." Officer Rukamp asked for appellant's driver's license and registration. Appellant said, "No." Officer Rukamp repeated the request, and appellant again responded, "No." Officer Rukamp asked appellant's wife to retrieve his driver's license and registration, which she did. Officer Rukamp then checked and ascertained that appellant's license had been suspended by the Motor Vehicle Administration ("MVA"). He placed appellant under arrest for driving while suspended.

After his arrest, appellant gave Officer Rukamp information about himself, including his address. The address he gave was 6192 Karas Walk, the same address at which he was arrested. That address also was the address on appellant's driver's license.

During Officer Rukamp's testimony, the State moved into evidence, without objection, a computer print-out of appellant's driving record, from the MVA. The record shows that on March 18, 1998, appellant's driver's license was suspended for refusal to submit to a breathalyzer test. That suspension was withdrawn on July 15, 1998. On January 28, 1999, appellant was charged with driving under the influence of alcohol. He was tried and convicted of that charge on June 2, 1999, and was assessed eight points. *See* TA § 16–402(a)(22) (conviction for DUI carries 8 points). Thereafter, on August 5, 1999, the MVA sent appellant a letter notifying him that unless he requested a hearing in ten days of the date the letter was mailed, his driver's license would be suspended. This notice of suspension letter was sent by certified mail. On August 20, 1999, appellant's license was suspended for six months. On August 30, 1999, the certified notice of suspension letter to appellant was returned to the MVA by the United States Postal Service.

The address reflected on the computer print-out of appellant's driving record as of July 16, 2000 (the date of the computer print-out) was 8715 Bryant Court, Bowie, Maryland.

The computer print-out states that an address change was made on July 8, 2000, ten days before the trial date.

Appellant testified in his own defense. He admitted driving on the night in question, but stated that he had not known, at that time, that his driver's license was suspended. He claimed that he had been unaware that Officer Rukamp was following him and he denied running away from Officer Rukamp. Appellant acknowledged drinking a beer when the officer came to the front door and telling him, "You did not see me driving." He also acknowledged that 6192 Karas Walk was his marital home but explained that he and his wife had been having marital problems and he was not living in the house during the period preceding his arrest. Instead, he was staying with his father and his sister.

According to appellant, his wife did not tell him about any correspondence for him from the MVA, and during the pertinent time frame he did not receive any mail at the Karas Walk address. Also, at some unspecified point in time, appellant's wife went to Virginia for three weeks, and was not collecting the mail at the Karas Walk address. Appellant went to that house "very seldom" and "wasn't concerned about too much in the mail." He happened to be at the house on the night in question because it was "the first night that [he and his] wife ... had been back together." Finally, appellant stated that he "had no idea" after the court proceeding of June 2, 1999, that his license was going to be suspended.

In finding appellant guilty of driving while suspended, the trial court stated:

When a defendant takes the stand, he puts his own character in evidence and the Defendant simply does not come off as credible, and let me explain to you why. He first of all basically says that the Officer was just making all of this up, that he was following him, that his lights weren't on, and so on and so forth. It's just not credible.

Moreover the Defendant is not a novice when it comes to the Motor Vehicle Administration. The Court notes that there was an address change on July 8th of 2000 on

**598**

[appellant's driving record]. The Defendant has an obligation to continually notify MVA of any change of address. He testified that he was quote, unquote, living off and on at his marital home and Bryant Street. I don't know if that's the father's residence or the sister's residence, but he had an obligation to notify MVA where he was. And it is ignorance and it is intentional ignorance to just say, well, ghee [sic], I didn't get the mail. He's not saying anyone usurped the mail, he's simply saying that I didn't get it, and that is not satisfactory.

Moreover, his testimony that he was convicted of a DUI, he's not supposed to be drinking, but he had a couple cocktails at dinner, and then he takes out a beer can and starts to drink in the officer's presence, again, puts his whole truthfulness and sincerity into obvious question. Fact of the matter is, the Court just found his testimony not credible. The Court enters a guilty finding to driving on a suspended license. I find that the evidence is sufficient to sustain that even if he didn't hear it from his attorney and that can't be introduced because that's attorney/client privilege, unless it was part of an actual record which the State hasn't produced, but the fact of the matter is, Defendant has been suspended before as shown by the record and he's not a novice in these kind of proceedings.

## DISCUSSION

■■■ Appellant contends that the evidence was insufficient to sustain his conviction because it could not support a finding of the *mens rea*—i.e., criminal intent—element of the crime of driving while suspended. Specifically, he argues that there was no evidence that on the night in question he knew that his driver's license was suspended; therefore, there was no evidence to support a finding that he intended to drive while his license was suspended. He maintains that the standard of proof of *mens rea* in a driving while suspended case is actual knowledge, of which there was no proof here; and that, even if deliberate ignorance or willful blindness is sufficient to show knowledge, the evidence was insufficient to support such a

finding. He relies upon *State v. McCallum,* 321 Md. 451, 583 A.2d 250 (1991), in advancing that argument.

The State, also citing *McCallum,* acknowledges that there was no evidence of actual knowledge in this case, *i.e.,* that appellant had obtained possession of the suspension letter and had read its contents. The State responds, however, that deliberate ignorance or willful blindness is a proper standard of proof of knowledge in a driving while suspended case, and that the proof in this case met that standard.

Before discussing the *McCallum* case, we shall explain with more particularity the operation of the statute under which appellant's license was suspended. The suspension was effected under TA § 16–404(b)(1)(i), which provides, in pertinent part, that if a person accumulates 8 points on his driver's record, the MVA "shall issue a notice of suspension." The notice "shall ... [b]e personally served or sent by certified mail, return receipt requested, bearing a postmark from the United States Postal Service." TA § 16–404(b)(2)(i). It shall state the duration of the suspension and advise the person of his right, within ten days after the notice is sent, to file a written request for a hearing before the MVA. TA § 16–404(b)(2)(ii) & (iii). Finally, "[u]nless a hearing is requested, each notice of suspension ... is effective at the end of the 10 day period after the notice is sent." TA § 16–404(b)(3). Thus, when the MVA issues a notice of suspension based on the accumulation of points and goes about serving it by mail (as opposed to personal service), the notice must be sent by certified mail. The suspension becomes effective 10 days after the notice was sent, unless a hearing was requested in that 10–day period.

In *State v. McCallum, supra,* 321 Md. 451, 583 A.2d 250, McCallum, like appellant, was charged with driving while suspended, under TA § 16–303(c).[2] McCallum was tried by a jury. His driving record, which was admitted into evidence,

---

**2.** TA § 16–303(c) states: "A person may not drive a motor vehicle on any highway ... while the persons's license or privilege to drive is suspended in this State."

showed that the MVA had mailed him three suspension letters: two for failing to pay fines in district court and one for failing to appear in district court. Ultimately, the MVA suspended McCallum's license.[3] The suspension letters were sent by ordinary mail, consistent with the applicable provision of the Transportation Article. *See* TA (1987) § 16–206(c). McCallum testified that, notwithstanding that the suspension letters had been mailed to the apartment that the MVA had on record as his address, he did not receive them because, when they were mailed, he was in jail on an unrelated charge, and was not living in the apartment. Moreover, while he was in jail, and during the time that the suspension letters were mailed, his landlord had brought eviction proceedings against him and had confiscated and destroyed all of his mail. Thus, according to McCallum, he never received the suspension letters and, at the time of his arrest for driving while suspended, did not know that his license had been suspended.

McCallum asked the trial court to instruct the jury that criminal intent is an element of the crime of driving while suspended. The court declined to do so. McCallum was convicted, and appealed on the ground, *inter alia,* that the trial court's refusal to instruct the jury about criminal intent was in error. This Court reversed the conviction, holding that *mens rea* is an element of the crime of driving while suspended. *McCallum v. State,* 81 Md.App. 403, 567 A.2d 967 (1990).

The Court of Appeals granted *certiorari* and affirmed the decision of this Court in a *per curiam* opinion. Reasoning

---

**3.** TA § 27–103(a) provides, at subsections (1) and (2), that upon failure to pay a traffic fine in accordance with the court's directive, the court may so certify to the MVA and, "after giving the person 10 days advance written notice, the [MVA] may suspend the driving privileges or license of the person until the fine has been paid." TA § 26–204(d) provides, at subsections (1) and (2), that on receipt of a notice from the district court that a person has not complied with a notice to appear in court contained in a traffic citation, the MVA shall notify the person that his "driving privileges shall be suspended unless, by the end of the 15th day after the date on which the notice is mailed, the person" pays the fine on the original charge or posts bond or a penalty deposit and requests a new trial date. If the person does neither, the MVA may suspend his driving privileges. TA § 26–204(e).

that driving while suspended is not a "public welfare" offense in which the legislature "intended to eliminate the requirement of *scienter* " and create a strict liability offense, 321 Md. at 457, 583 A.2d 250, the Court held that *"mens rea* is required for the charge of driving while suspended, and the trial judge erred in failing to so instruct the jury." *Id.* The Court did not elaborate further.

In a concurring opinion, Judge Chasanow, expressing the belief that, for the guidance of the trial court, the Court of Appeals "should ... elaborate on the *mens rea* that would be necessary to convict," 321 Md. at 458, 583 A.2d 250, explained that the criminal intent required for the offense of driving while suspended "is 'knowledge' rather than 'intent.' Unquestionably, McCallum intended to drive. The issue is whether McCallum had 'knowledge' that his driving privileges were suspended, and thus, his mental state must be assessed." *Id.* Judge Chasanow further explained that knowledge in this context can be "actual knowledge," meaning "an actual awareness or an actual belief that a fact exists," or " 'deliberate ignorance' or 'willful blindness,' " which is to say that a person "believes that it is probable that something is a fact, but deliberately shuts his or her eyes or avoids making reasonable inquiry with a conscious purpose to avoid learning the truth." *Id.* "Deliberate ignorance requires a conscious purpose to avoid enlightenment; a showing of mere negligence or mistake is not sufficient. Also, 'deliberate ignorance' is a *form* of knowledge, not a *substitute* for knowledge. Therefore, if McCallum actually believed that his driver's license was not suspended, he could not be guilty of the offense." *Id.* at 461, 583 A.2d 250 (emphasis in original).

Judge Chasanow went on to describe facts that would be sufficient to support a finding of deliberate ignorance in McCallum's case:

Deliberate ignorance should be established if McCallum believed it was probable that his license was suspended and if he deliberately avoided contact with the MVA to evade notice. For example, the trier of fact could find that: 1) based on his failure to pay district court fines and failure to

appear in court, McCallum knew that it was probable that his license was suspended; 2) McCallum failed to fulfill his obligation to keep MVA apprised of his current address, [fn] or that he failed to contact MVA after learning that for several months his mail was destroyed, and 3) McCallum deliberately avoided contact with MVA to avoid receiving notice of the suspension of his driver's license. These findings should justify a conclusion that McCallum's intentional avoidance of notice of his suspension satisfied the mens rea requirement and was the equivalent of actual knowledge of his suspension.

[fn] Md.Code (1984, 1987 Repl.Vol., 1990 Cum.Supp.), Transportation Article, § 16–116(a) requires a licensed driver to notify the MVA within thirty days of moving from the address shown on the license.

321 Md. at 461, 583 A.2d 250.[4]

▪ As we have explained, *McCallum* reached this Court and the Court of Appeals on a pure question of law: whether *mens rea* is an element of the offense of driving while suspended so that a defendant who is on trial for that offense is entitled to a jury instruction in that regard. Unlike *McCallum*, the case at bar was tried by the court without a jury.

---

**4.** Judge McAuliffe wrote a dissenting opinion in which he expressed the view that actual knowledge of the suspension of one's driving privileges is not an element of the offense of driving while suspended. He explained:

It would be a sad state of affairs if a suspension of driving privileges could not be made effective until the State had given actual notice of the suspension to the defendant. Irresponsibility, failure to obey the law regarding notification of change of address, and a nomadic lifestyle would be rewarded. Only those who were conscientious in attending to their affairs would be affected by suspensions. The legislature has required that the MVA follow procedures which are reasonably calculated to give actual notice of suspension to licensees. It has specifically delayed the effective date of suspension in cases of this kind, to reasonably ensure that the licensee receives notice and has an opportunity to correct any oversight. This is a reasonable, and in my judgment, lawful compromise between the Utopian desire for actual notice in every case, and the practical realization that requiring such notice is unworkable.

321 Md. at 464–65, 583 A.2d 250.

Accordingly, we review "both the law and the evidence, and
. . . will not set aside the judgment of the trial court unless it
is clearly erroneous." *General Motors Corporation v.
Schmitz*, 362 Md. 229, 233, 764 A.2d 838 (2001), (citing Md.
Rule 8–131(c); *Spector v. State*, 289 Md. 407, 433, 425 A.2d 197
(1981); *Kowell Ford, Inc. v. Doolan*, 283 Md. 579, 581, 391
A.2d 840 (1978)).

The record in the case *sub judice* reflects that the trial
court was well aware of the majority and concurring opinions
in *State v. McCallum*, and that it concluded from the evidence
presented that appellant had the requisite criminal intent for
the offense of driving while suspended because he was deliber-
ately ignorant of the suspension of his driving privilege.
Before addressing the issue of sufficiency, therefore, we must
decide the implicit legal question of whether the "deliberate
ignorance" or "willful blindness" standard articulated by
Judge Chasanow in his concurrence in *McCallum* is adequate
to establish knowledge, and thus the element of intent, for the
offense of driving while suspended.

The notice of suspension letter in this case was sent by the
MVA by certified mail, return receipt requested, because by
statute, the letter was required to be served in that fashion.
Ordinarily, and unless a statute provides otherwise, the MVA
may serve notice by mail by sending it first class, postage
prepaid. TA § 11–131. As we have explained, however,
under TA § 16–404(b)(2)(i), if a notice of suspension for an
accumulation of points is to be served by mail, it must be sent
certified mail, return receipt requested. When a letter is sent
by certified mail, return receipt requested, the United States
Postal Service delivers to the addressee a green card stating
that the certified letter is at the post office, and giving the
name of the sender. The letter itself is not delivered; rather,
the addressee (or, if it is not restricted delivery, someone else)
must go to the post office to claim it, and must sign a return
receipt for it. U.S. Postal Serv., Domestic Mail Manual D–13
(2000). If no one claims the letter at the post office within 15
days, the United States Postal Service returns it to the
sender. *Id.* at D–14.

Keeping in mind Judge Chasanow's description of "deliberate ignorance" as "a *form* of knowledge, not a *substitute* for knowledge," we think that it would make little sense to conclude that the only form of knowledge of an impending suspension under TA § 16–404–(b)(1)(i) sufficient to establish the *mens rea* for the offense of driving while suspended is actual knowledge gained from receipt of a suspension letter sent by certified mail. If that were the case, the certified mail requirement of that statute would make service by mail useless and ineffectual in virtually every case in which a person's privilege to drive was legitimately subject to suspension. A person having reason to think that his driving privilege was being threatened with suspension would have no incentive to go to the post office to collect his certified letter; to the contrary, he would have every incentive to avoid doing so because by not collecting the certified letter, he could claim lack of knowledge and thereby insulate himself from a successful prosecution for driving while suspended. It would make no difference that his lack of knowledge was self-imposed. Nor would it make any difference that, given his already existing awareness that his right to drive might be subject to suspension, the delivery of a green card informing him that the MVA had a letter for him at the post office was tantamount to being placed on actual knowledge that what he had thought likely now was imminent.

We see no meaningful distinction between the state of knowledge of an impending driver's license suspension that a person gains from reading a certified letter from the MVA to that effect and the state of knowledge of an impending driver's license suspension that a person gains when, having reason to believe that his privilege to drive may be in jeopardy, he learns that the post office is holding a certified letter for him from the MVA. In the latter situation, the person knows enough about the likely contents of the MVA letter that his unexplained failure to obtain it from the post office is "deliberate ignorance" or "willful blindness."

■ With respect to the issue of sufficiency, we determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the element of criminal intent beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In so doing, we "giv[e] due regard to the trial court's finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses." *State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336 (1994).

■ In this case, there was ample evidence of knowledge on appellant's part sufficient for the court to find, beyond a reasonable doubt, the intent element of the offense of driving while suspended. As the court pointed out, appellant was not a novice in matters pertaining to the MVA. He had had his driving privileges suspended in the past. On June 2, 1999, he was assessed 8 points upon being convicted of driving while under the influence. It is immaterial whether appellant was informed by the court that assessed those points that the law requires the MVA to notify a person who has accumulated 8 points that, absent a request for a hearing, his license will be suspended. "[E]veryone is 'presumed to know the law regardless of conscious knowledge or lack thereof, and [is] presumed to intend the necessary and legitimate consequences of [his] actions in its light.'" *Benik v. Hatcher,* 358 Md. 507, 532, 750 A.2d 10 (2000) (quoting *Samson v. State,* 27 Md.App. 326, 334, 341 A.2d 817 (1975)) (citing *Grumbine v. State,* 60 Md. 355 (1883)). Once appellant was convicted of DUI and had 8 points assessed against him, he had reason to believe that the MVA would take action to suspend his driving privilege.

After stating no less than three times that she found appellant's testimony to lack any credibility, the court found that the house on Karas Walk, in which appellant was arrested, was his marital home and that he was living there at least part of the time. The evidence established that the Karas Walk address appeared on appellant's driver's license, and, accordingly, was the address to which the MVA would have

addressed the certified notice of suspension letter. (Indeed, the evidence established that appellant did not inform the MVA that he had an address other than Karas Walk until July of 2000, eleven months after the suspension letter was sent.) The evidence thus supported a rational finding that the green card notifying appellant that a certified letter to him from the MVA was awaiting collection at the post office was delivered to the house at which appellant was living at least part time. This evidence in turn supported a rational inference that appellant was aware of the existence of the green card, and simply did not go to the post office to pick up the certified letter. This evidence, together with the evidence of appellant's knowledge concerning his accumulated points, was sufficient to support a rational factual finding that any lack of actual knowledge by appellant of the suspension of his privilege to drive was the result of "deliberate ignorance" or "willful blindness" on his part.[5]

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

**5.** Officer Rukamp's testimony about appellant's remark to him furnished additional circumstantial evidence of appellant's knowledge that his driving privilege was suspended. As noted above, Officer Rukamp testified that appellant said that he "wasn't driving and [Officer Rukamp] couldn't prove it." (Indeed, also as noted, appellant acknowledged telling Officer Rukamp, "You did not see me driving.") This statement by appellant (and the one he admitted making) could be construed as an admission by appellant that on the date in question he knew he was not supposed to be driving at all.