UNITED STATES of America,

v.

Clifton DAVIS, Defendant.

No. CRIM.02–2134M.

United States District Court, D. Maryland.

May 1, 2003.

Elizabeth Pearl Raman, Arlington, VA, for Clifton Davis.

## MEMORANDUM OPINION

DAY, United States Magistrate Judge.

Clifton Davis ("Defendant") is charged with the following federal offenses of Driving Under the Influence of Alcohol and/or Drugs in violation of 36 C.F.R. 4.23(a)(1), Unsafe Operation in violation of 36 C.F.R. 4.22, and Failure to Report Damage of Property to the Motor Vehicle Administration in violation of 36 C.F.R. 4.4(b). In addition, Defendant is charged with the following Maryland offenses, as incorporated by 36 C.F.R. § 4.2: Driving a Motor Vehicle on a Suspended License in violation of MD. CODE ANN., [TRANSP.] § 16–303(c); Driving on a Revoked Maryland License in violation of MD. CODE ANN., [TRANSP.] § 16–303(d); Following Too Closely in violation of MD. CODE ANN., [TRANSP.] § 21–310(a); Reckless Driving in violation of MD. CODE ANN., [TRANSP.] § 21–901.1(a); Fleeing to Elude Police in violation of MD. CODE ANN., [TRANSP.] § 21–904(e); and Failure to Stay in One Lane in violation of MD. CODE ANN., [TRANSP.] § 21–309(b). This matter came before the Court for a non-jury trial on January 6, 2003.[1] At the conclusion of closing arguments, the Court provided counsel the opportunity to submit memoranda in support of the closing arguments. Those memoranda have been reviewed by the Court. In light of the evidence presented, the Court makes the following findings of fact and conclusions of law.

### I.  FINDINGS OF FACT.

At approximately 8:00 p.m. on July 27, 2002, while Officer Gary E. Hatch was

---

1.  At the conclusion of Government's presentation of evidence, the Court granted Defendant's unopposed Motion for Judgment of Acquittal on the following charges: Driving on a Suspended Out of State License in violation of MD. CODE ANN., [TRANSP.] § 16–303(i); and Speeding, traveling 80 miles per hour in a 55 mile per hour area, in violation of 36 C.F.R. § 4.21(c).

issuing a violation notice to a motorist on the Baltimore–Washington Parkway ("Parkway"), he was alerted by another motorist that a vehicle was being operated erratically on the Parkway. Shortly thereafter, Officer Hatch heard a crashing sound and observed a black sports utility vehicle make contact with construction barrels on the right shoulder of the Parkway which were used to close off the exit ramp to Route 32. The black vehicle, later identified as Defendant's 2001 Isuzu Rodeo, moved off to the right shoulder and then swerved back into the far-right travel lane after having hit three to four barrels. Officer Hatch returned to his marked United States Park Police vehicle and began pursuing Defendant. Officer Hatch testified that Defendant was traveling at approximately 65 miles per hour. Defendant was observed swerving onto the right shoulder of the Parkway and returning to the far right traveling lane several times. After Officer Hatch noticed Defendant's pattern of doing so, the Officer activated his emergency equipment (i.e., roof rack lights, flashing headlights, and siren).

Defendant increased his speed to approximately 75 to 80 miles per hour, occasionally encountering slower-moving vehicles, getting "right on top of them and then had to slam his breaks on to avoid striking them." Defendant, while breaking, would repeatedly swerve as if losing control of his vehicle before correcting. Defendant also changed lanes a number of times to take an open lane and increased his speed when no other vehicle was directly in front of him. Officer Hatch changed lanes as Defendant did until the Officer finally took the center lane when he saw that Defendant was quickly approaching a commercial truck. Defendant approached the commercial truck and applied his brakes to avoid hitting it, causing his own vehicle to slide sideways. Defendant then attempted to move to the left lane, where Officer Hatch was driving, causing the Officer to swerve to avoid a collision with Defendant. Officer Hatch pursued Defendant in this manner from the Route 32 area of the Parkway until shortly after the W. Nursery Road area of the Parkway, a span of approximately 6 to 7 miles.

Sergeant William E. Hayes of the Maryland State Police entered the Parkway, northbound, north of W. Nursery Road and parked his unmarked cruiser on the left shoulder of the roadway. From that position, Sergeant Hayes observed Defendant's vehicle approaching and being pursued by a United States Park Police vehicle with emergency equipment activated. Sergeant Hayes activated his vehicle's emergency equipment and positioned his vehicle in front of Defendant in an effort to slow Defendant's speed. At that point, by Sergeant Hayes' estimate, Defendant was traveling at 75 to 80 miles per hour. Sergeant Hayes remained in front of Defendant's vehicle, changing lanes each time Defendant changed lanes—approximately 4 to 5 times—eventually slowing him down to a stop after approximately 1 mile. Defendant stopped his vehicle in the far right travel lane.

Once Defendant's vehicle was stopped, Officer Hatch and Sergeant Hayes approached Defendant's vehicle with their weapons drawn. Both Defendant and his passenger were non-responsive and appeared disoriented. When asked to show their hands, neither occupant of the vehicle responded with more than a "blank" stare. Officer Hatch reached into the vehicle and across Defendant's lap to unlatch Defendant's seatbelt, then physically removed Defendant from the vehicle. The passenger was removed from the vehicle in the same manner. According to Sergeant Hayes, Defendant was not combative in any way.

Defendant was taken to the United States Park Police station in Greenbelt for processing. Defendant continued to appear disoriented and confused about where he was and the reason why he was there. Defendant was asked for his name and home address, but did not appear able to provide that information. Officer Hatch considered performing field sobriety tests, but given Defendant's apparent inability to communicate, the Officer opted not to conduct such testing. Defendant was then taken to Prince George's County Hospital where blood samples were taken for screening. Officer Hatch escorted Defendant to Hyattsville for detention. Officer Hatch testified that it was at that time, approximately three hours after initially encountering Defendant, that Defendant began to speak normally and appeared coherent.

## II. CONCLUSIONS OF LAW

1. *The Court finds Defendant not guilty driving under the influence of alcohol and/or drugs in violation of 36 C.F.R. § 4.23(a)(1).*

■ The Code of Federal Regulations prohibits "[o]perating or being in actual physical control of a motor vehicle" while "under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation." 36 C.F.R. § 4.23(a)(1) (2003). The Government bears the burden of proving each element of this offense, specifically that (1) Defendant was operating or was in actual physical control of a vehicle, (2) that Defendant was under the influence of alcohol, or a drug, or drugs, or any combination thereof, and (3) to a degree of intoxication that rendered Defendant incapable of safe operation. *Id.* Clearly, Defendant was operating his vehicle, however, the Government failed to carry its burden with regard to the final two elements of this offense.

■ The Government bears the burden of proving that a defendant is under the influence of a substance and what the substance actually is at the time of the conduct in question. The Government's burden is a high one. This Court cannot convict Defendant given the exculpatory results of chemical blood analysis performed here. The Government does not and cannot assert that the chemical analysis performed in the instant case revealed the presence of alcohol in Defendant's blood. Nor is there any other evidence of the consumption of alcohol by Defendant. Further, the results of the chemical analysis ruled out the presence of PCP, LSD, or some other hallucinogenic drug. The only evidence presented regarding the presence of any drug in Defendant's system was that marijuana was present in an unspecified concentration.

Defendant admitted to having used marijuana in the two weeks prior to July 27, 2002 but denied having used marijuana on the day in question. Officer Hatch's search of Defendant's person and vehicle upon arrest did not reveal any drugs or drug paraphernalia. The support for the Government's claim that Defendant was inebriated were his "glassy eyes" and his prolonged appearance that seemed to convey an absence of knowledge of what was going on, coupled with bad driving. Defendant did not appear to be alert and oriented in any fashion. The Government offered no evidence that the amount of marijuana affected Defendant to the extent of rendering him incoherent or disoriented. The Government failed to provide any evidence that Defendant's driving was *affected by* alcohol, or a drug, or drugs, or any combination thereof, *to a degree* that rendered the operator incapable of safe operation.

Defendant pled not guilty to each of the charges herein arguing that he may have been involuntarily intoxicated. The Government has responded that involuntary intoxication is akin to insanity, and as such, Defendant may not rely on that defense having failed to notify the Government that the defense of involuntary intoxication would be raised.[2] Defendant's claim of involuntary intoxication was based on mere speculation, which began as Defendant's fog of disorientation began to lift following his arrest. As highlighted by the Government's argument, Defendant waived the alternative of proceeding under an insanity defense by failing to give the notice required by FED. R. CRIM. P. 12.2. Neither the Government nor Defendant produced convincing evidence of intoxication at all, therefore the Court is not persuaded that Defendant was *involuntarily* intoxicated.

There are other explanations for a person to become disoriented or catatonic other than drug and/or alcohol use. Officer Hatch recalled asking Defendant whether he suffered from a medical condition that contributed to his behavior and testified in court that from his training and experience it is possible for some medical conditions to cause a person to act the way Defendant acted. Defendant could have suffered from a medical condition or may have fallen under the spell of vehicle fumes. While direct evidence of voluntary intoxication may be difficult to adduce, the Government must do more to support a conviction than claim that Defendant's version of events is merely a collection of self-serving denials while simultaneously ignoring the fact that there was no significant evidence of the presence of alcohol and/or drug use. The Government's evidence is simply not enough to prove Defendant's guilt beyond a reasonable doubt.

The Court does not find that Defendant has been proven, beyond a reasonable doubt, guilty of driving under the influence.

2. *The Court finds Defendant guilty of unsafe operation in violation of 36 C.F.R. § 4.22.*

The Code of Federal Regulations prohibit:

(1) Operating a motor vehicle without due care or at a speed greater than that which is reasonable and prudent considering wildlife, traffic, weather, road and light conditions and road character. (2) Operating a motor vehicle in a manner which unnecessarily causes its tires to squeal, skid or break free of the road surface. (3) Failing to maintain that degree of control of a motor vehicle necessary to avoid danger to persons, property or wildlife.

36 C.F.R. § 4.22(b) (2003).

The Fourth Circuit has adopted the presumption that where a statute fails

---

**2.** The Government relies on FED. R. CRIM. P. 12.2 which provides that "[a] defendant who intends to assert a defense of insanity at the time of the alleged offense must so notify an attorney for the government in writing ... A defendant who fails to do so cannot rely on an insanity defense." The objective of this rule is to allow the government time to prepare to prove sanity beyond a reasonable doubt, which is the Government's burden once an insanity defense is raised, and respond to a defendant's use of expert testimony regarding mental state. FED. R. CRIM. P. 12.2 advisory committee's note. "Failure to give notice commonly results in the necessity for a continuance in the middle of a trial, thus unnecessarily delaying the administration of justice." *Id.* Here, Defendant has not sought to introduce expert testimony regarding his mental state at the time in question. While the plain language and the purpose of FED. R. CRIM. P. 12.2 provide no basis for the Government's position, that issue need not be decided due to Defendant's failure to persuade the Court of his involuntary intoxication defense.

to specify a specific intent required to be in violation thereof, that the statute should be interpreted as a general intent offense. *United States v. Darby,* 37 F.3d 1059, 1066 (4th Cir.1994). The plain language of 36 C.F.R. § 4.22 indicates that it is the intent to operate a vehicle that triggers the application of this Code. Defendant was in fact operating his vehicle. Defendant's intent can be inferred from his initial decision to begin driving the vehicle, and continued over the 6 to 7 miles of erratic driving on the Parkway. *United States v. Wilkins,* 385 F.2d 465, 473 (4th Cir.1967)("As a general rule, it is reasonable to infer that a person ordinarily intends all of the natural and probable consequences of acts knowingly done or knowingly omitted").

■ The evidence shows that Defendant operated his vehicle in a manner that violated this Regulation. Defendant failed to maintain a degree of control necessary to prevent his collision with the construction barrels at the exit ramp to Route 32. His speed, which was not reasonable given traffic conditions, caused him to unnecessarily skid while approaching the commercial truck. Defendant then failed to maintain a degree of control necessary to avoid danger to Officer Hatch and caused the Officer to swerve to avoid a collision. The Court finds Defendant guilty of the unsafe operation of his vehicle.

3. *The Court finds Defendant not guilty of failure to report damage of property to the Motor Vehicle Administration in violation of 36 C.F.R. 4.4(a).*

The Code of Federal Regulations provide that:

> The operator of a motor vehicle involved in an accident resulting in property damage, personal injury or death shall report the accident to the superintendent as soon as practicable, but within 24 hours of the accident. If the operator is physically incapable of reporting the accident, an occupant of the vehicle shall report the accident to the superintendent.

36 C.F.R. § 4.4(a) (2003).

As the Government produced no evidence that Defendant failed to report any claimed property damage, the Court finds Defendant not guilty of this offense.

4. *The Court finds Defendant guilty of driving a motor vehicle on a suspended license in violation of MD. CODE ANN., [TRANSP.] § 16–303(c).*

■ MD. CODE ANN., [TRANSP.] § 16–303(c) (2002) provides that "[a] person may not drive a motor vehicle on any highway ... while the person's license or privilege to drive is suspended in this State." While the statute does not explicitly state a *mens rea* element to the offense, the Maryland courts have interpreted this statute as requiring a culpable mental state. *State v. McCallum,* 321 Md. 451, 583 A.2d 250 (1991). The mental state at issue here is awareness that one's driving privileges have been suspended. *United States v. Haynesworth,* 743 F.Supp. 388 (D.Md. 1990); *Rice v. State,* 136 Md.App. 593, 766 A.2d 663 (2001).

■ Government's Ex. 1, Defendant's driving record printed on July 28, 2002, reflects that Defendant's driving license was suspended on June 27, 2002, that a suspension letter was mailed to Defendant on that date, and that his license remained revoked/suspended on July 27, 2002. In addition to the State having followed its practice of mailing a suspension letter, which alone would be sufficient evidence that Defendant was aware of his suspension, Defendant testified that he was in the "process to get [his] license back." *See Haynesworth,* 743 F.Supp. at 392 (apply-

ing the rule that proof of the Motor Vehicle Administration's "compliance with its own procedure . . . by which notice of suspension is sent to the licensee may, depending on the facts of the case, provide strong proof of the presence of *mens rea* ")(*quoting McCallum v. State*, 81 Md. App. 403, 567 A.2d 967 (1990), *cert. granted*, 319 Md. 111, 570 A.2d 1244 (1990)). The Court concludes that Defendant was aware that his driving privileges had been suspended. The Government satisfied its burden to persuade the Court that Defendant intended to operate his vehicle. Given this evidence, the Court finds Defendant guilty of driving a motor vehicle on a suspended license.

5. *The Court finds Defendant guilty of driving on a revoked Maryland license in violation of MD. CODE ANN., [TRANSP.] § 16–303(d).*

▆▆▆ MD. CODE ANN., [TRANSP.] § 16–303(d) (2002) provides that "[a] person may not drive a motor vehicle on any highway . . . while the person's license or privilege to drive is revoked in this State." While the statute does not explicitly state a *mens rea*, the Maryland courts have interpreted it as requiring a defendant's awareness of the revocation as an element of the offense. *See Haynesworth*, 743 F.Supp. 388. Government's Ex. 1, reflects that Defendant's driver's license was revoked on August, 1, 2001 and remained "revoked/suspended" on July 27, 2002. Given this evidence as well as Defendant's testimony regarding his attempt to reinstate his license, the Court finds Defendant guilty of driving a motor vehicle on a revoked license.[3]

6. *The Court finds Defendant guilty of following too closely in violation of MD CODE ANN., [TRANSP.] § 21–310(a).*

▆▆▆ MD. CODE ANN., [TRANSP.] § 21–310(a) (2002) provides that "[t]he driver of a motor vehicle may not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the other vehicle and of the traffic on and the condition of the highway." Again, this statute defines a crime of general intent, the intent to drive, which is not negated by intoxication. *See Darby*, 37 F.3d at 1064–66. Given the testimony of Officer Hatch regarding Defendant's approaching so close to other vehicles that he had to repeatedly slam on his brakes to avoid collisions and that Defendant went into a skid to avoid colliding with the commercial truck that he approached too closely, the Court finds Defendant guilty of following to closely.

7. *The Court finds Defendant guilty of fleeing to elude police in violation of MD. CODE ANN., [TRANSP.] § 21–904(e).*

▆▆▆ MD. CODE ANN., [TRANSP.] § 21–904(e) (2002) provides that "[i]f a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver of a vehicle may not attempt to elude the police officer by willfully failing to stop the

---

**3.** Maryland courts have held that since a defendant cannot be punished twice for convictions for driving with a revoked license and driving with a suspended license arising from a single act of driving, the statutory offenses will merge for the purposes of sentencing. *Jones v. State*, 357 Md. 141, 742 A.2d 493 (1999). This Court is not bound by the accompanying dicta that deemed the offense of driving with a revoked license as the more serious offense of the two, leading that court to reverse defendant's sentence stemming from the conviction for driving with a suspended license. *See Id.* at 506. Defendant will be sentenced for driving with a suspended license only.

driver's vehicle." MD. CODE ANN., [TRANSP.] § 21–904(e). Defendant clearly failed to stop his vehicle when signaled to do so by Officer Hatch's activation of his emergency equipment. Once Officer Hatch began pursuit, Defendant increased his speed from approximately 65 miles per hour to upwards of 75 miles per hour and dodged in and out of lanes for 6 or 7 miles until forced to stop by Sergeant Hayes. The Court finds that Defendant's conduct was the result of voluntary actions and not the result of duress, insanity, or other behavior lacking the requisite *mens rea.* The Court finds Defendant guilty of fleeing to elude police.

8. *The Court finds Defendant guilty of reckless driving in violation of MD. CODE ANN., [TRANSP.] § 21–901.1(a).*

■ MD. CODE ANN., [TRANSP.] § 21–901.1(a) (2002) provides that: "[a] person is guilty of reckless driving if he drives a motor vehicle: (1) In wanton or willful disregard for the safety of persons or property; or (2) In a manner that indicates a wanton or willful disregard for the safety of persons or property." Subsection (a)(2) of this statute does not require that the Government prove a defendant's state of mind and allows a violation of this statute to be based on evidence of Defendant's manner of driving which "indicates" a disregard for the safety of persons and property. *Taylor v. State,* 83 Md.App. 399, 574 A.2d 928, 930 (1990). Defendant's operation of his vehicle was unsafe and showed vagrant disregard for the property and safety of others. The Court finds Defendant guilty of reckless driving.

9. *The Court finds Defendant guilty of failure to stay in one lane in violation of MD. CODE ANN., [TRANSP.] § 21–309(b).*

■ MD. CODE ANN., [TRANSP.] § 21–309(b) (2002) provides that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and may not be moved from that lane or moved from a shoulder or bikeway into a lane until the driver has determined that it is safe to do so." The evidence reflects that Officer Hatch was in the lane adjacent to Defendant for an appreciable period. If he cared to look, Defendant should have seen Officer Hatch's vehicle. Yet, Defendant began to change lanes, and Officer Hatch was forced to swerve to avoid a collision with Defendant. Therefore, the Court concludes that Defendant failed to determine the safety of that lane change and finds Defendant guilty of failure to stay in one lane.

An appropriate Order of Judgment shall issue.

### ORDER OF JUDGMENT

For the reasons set forth in the Memorandum Opinion in the above-captioned matter, it is this 1st day of May, 2003, Defendant is hereby

ADJUDGED **Not Guilty** of Driving Under the Influence of Alcohol and/or Drugs in violation of 36 C.F.R. 4.23(a)(1);

ADJUDGED **Guilty** of Unsafe Operation in violation of 36 C.F.R. 4.22;

ADJUDGED **Not Guilty** of Failure to Report Damage of Property to the Motor Vehicle Administration in violation of 36 C.F.R. 4.4(b);

ADJUDGED **Guilty** of Driving a Motor Vehicle on a Suspended License in violation of MD. CODE ANN., [TRANSP.] § 16–303(c);

ADJUDGED **Guilty** of Driving on a Revoked Maryland License in violation of MD. CODE ANN., [TRANSP.] § 16–303(d);

ADJUDGED **Guilty** of Following Too Closely in violation of MD. CODE ANN., [TRANSP.] § 21–310(a);

ADJUDGED **Guilty** of Fleeing to Elude Police in violation of MD. CODE ANN., [TRANSP.] § 21–904(e);

ADJUDGED **Guilty** of Reckless Driving in violation of MD. CODE ANN., [TRANSP.] § 21–901.1(a);

ADJUDGED **Guilty** of Failure to Stay in One Lane in violation of MD. CODE ANN., [TRANSP.] § 21–309(b);

The Clerk is hereby ORDERED to enter judgment in this case as adjudged herein, and it is further

ORDERED, that a sentencing hearing shall be set for June 11, 2003 at 8:30 a.m., in Courtroom 2A.